**KELLY CONTRACTING COMPANY,**
**Appellant,**

**v.**

**Elizabeth P. ROBINSON, Administratrix of the Estate of George Fletcher Robinson and Workmen's Compensation Board, Appellees.**

Court of Appeals of Kentucky.

Feb. 7, 1964.

Rehearing Denied May 15, 1964.

Victor W. Ewen, Jones, Ewen & Mackenzie, Louisville, for appellant.

Herbert D. Liebman, Howard Black, Frankfort, for Robinson, appellee.

John B. Breckinridge, Atty. Gen., for Workmen's Compensation Bd., appellee.

PALMORE, Judge.

George Fletcher Robinson, 40 years of age, fell dead while engaged in the course of his employment with the appellant company, a road contractor. On the theory that his death occurred by reason of a coronary occlusion resulting from his work the Workmen's Compensation Board awarded maximum benefits on the personal representative's claim. The company appeals from a judgment of the Shelby Circuit Court affirming the award.

The dispositive question is whether the evidence was sufficient to support a factual finding that the physical exertion of Robinson's work was a causal factor in the fatal attack. To phrase it in terms of legal principle, was there substantial evidence to indicate a reasonable probability that the work caused or contributed to the injury?

Robinson's usual activities were to operate a watering tank truck which wet down the sub-grade of the road under construction and, from time to time, to dismount and dig "bleeder drains" in the loose dirt piled against the edge of the newly de-

posited crushed rock so that the water would drain out of the rock and off to the side of the road. The latter job consisted of using a hand shovel to displace three or four shovels full of dirt and then walking 100 feet and repeating the operation. Ordinarily it was not a strenuous activity. A fellow workman said, "As far as labor work, I think it's just a simple ordinary job."

Though no witness observed Robinson actually engaged in the shovel work on the day of his death (which was variously estimated to have occurred around 9 or 10 o'clock in the morning), he had been seen walking along the road carrying a shovel a short while before the fatal attack. The day (July 15) was hot, and he was perspiring. Moments before the end he was on his water truck which was parked on a bridge over Bullskin Creek, the source from which water was pumped for use on the road. His foreman, working at the other end of the bridge, whistled and motioned for Robinson to come over to him. The foreman then directed his attention to the matters immediately at hand and did not again see Robinson until he, the foreman, looked around three or four minutes later and found him lying on the ground. Robinson had walked across the bridge, a distance of about 100 feet, and had just about reached the foreman when he fell. This is the substance of the evidence bearing upon Robinson's physical activity immediately preceding his death.

There was but one medical witness, Dr. L. A. Wahle, who as county coroner examined Robinson after death and executed a death certificate assigning coronary occlusion as the cause. He had never seen the decedent before. He said that his verdict was based partially on a history of pre-existing coronary disease, which history was given him by members of the family and other associates of Robinson. He had no written record and could not recall the identities of the specific persons from whom he obtained this information. Robinson's widow testified that he had never had heart trouble or manifested any sign of ill health.

Dr. Wahle recommended to the members of the family that if they had any further interest in the cause of death they have an autopsy. However, this was not done.

On the witness stand Dr. Wahle declined to say that the occlusion would have occurred regardless of the work Robinson was doing, but indicated that it *could* have. He likewise declined to say that the work was or probably was a causative factor, but said that it *could* have been. The following quotations fairly exemplify his testimony in this respect:

"I can say that he died while at work, and his cause of death was coronary occlusion, the extent to which his occupation caused his death is a questionable factor."

Q 83: "Without the benefit of more information such as might be obtained in an autopsy, it would be purely mere speculation to try to guess."

Answer: "It would be speculation," etc.

Q 87: "You stated in response to one of Mr. Ewen's questions that the physical exertion which Mr. Robinson experienced as a result of his employment and the heat of the day were factors in causing his death, is that correct?"

Answer: "I believe, Mr. Liebman, that my remarks were that the conditions that existed the day of his death could have been a factor in his fatal occlusion."

In Terry v. Associated Stone Co., Ky., 334 S.W.2d 926 (1960), the Board's finding was supported by medical testimony to the effect that the coronary occlusion was "probably precipitated" by Terry's exertion. In Grimes v. Goodlett and Adams, Ky., 345 S.W.2d 47 (1961), three doctors expressed opinions on the relationship of the work to the heart attack. One said the exertion "could have" contributed and the

other two said it *probably did*. In the absence of any evidence to the contrary, we held that this testimony was conclusive.

Our decision in the Grimes case was premised on the expert testimony to the effect that the decedent's exertion probably did contribute to his death. Such testimony constitutes substantial evidence sufficient to require an award in the absence of rebuttal or to sustain an award in the event the board chooses to believe it over rebutting testimony. But there is a significant difference between probability and possibility. A possibility is not enough to support a finding.[1] Terry v. Associated Stone Co., Ky., 334 S.W.2d 926, 928 (1960). In our opinion the words "could" and "could have" speak in terms of possibility only, not probability. The excerpt from Dr. Wahle's testimony quoted in the dissent to this opinion, to the effect that the disease *could* have progressed in such a manner that the work *would have been sufficient* to induce a fatal conclusion, amounts to nothing more than a conjecture of what might have been.

In the absence of medical testimony that the physical stress of Robinson's work did or probably did cause, contribute to or precipitate his coronary occlusion, a court cannot find it so without assuming an expert medical proficiency of its own. It may be that Robinson's claim inherently was as valid as those in the Terry and Grimes cases, but the difference is in the witnesses. Neither the board nor the courts can use the testimony from Terry and Grimes in this case, and the relationship between physical activity and coronary occlusion is not so clearly established that we could take judicial notice that if a man has an occlusion while he is engaged in manual labor, or immediately afterward, the exertion is probably a causative factor. That must come from the mouth of a qualified member of the medical profession before it can be found as a fact in a court of law.

Since the claim cannot be sustained at all, it is unnecessary to discuss the board's action in rejecting Dr. Wahle's thesis to the effect that exertion never is the sole cause of a coronary occlusion, while at the same time accepting his opinion that there was an occlusion, an error that resulted in a maximum award rather than an apportionment.

The judgment is reversed with directions that it be remanded to the Workmen's Compensation Board for dismissal of the claim.

WILLIAMS, J., dissents.

WILLIAMS, Judge (dissenting).

I most respectfully dissent from the majority opinion because I believe we reached the point of no return in Terry v. Associated Stone Company, Ky., 334 S.W.2d 926, and Grimes v. Goodlett and Adams, Ky., 345 S.W.2d 47. Without intending to emasculate the science of semantics I am of the opinion that, when a doctor states a condition could have caused a coronary occlusion, he has concluded the question almost as definitely as when he states the same condition probably caused the trouble.

In both the Terry and Grimes cases the doctors vacillated in their testimony concerning the cause of the traumatic injury. For example, in the Grimes case various doctors discussing the relationship between the work which was being done and the injury which occurred said: "Don't know," "could have," "direct contribution," "could reasonably be," "I believe it was," "probably precipitated," "not necessarily a precipitating cause," etc. In the Terry case one

---

1. "To establish causal connection between an accident and an injury the standard of proof is held to require medical testimony to the effect that the accident 'caused' the injury, not that it 'could have' or 'probably did,' though absolute medical certainty is not demanded." Schneider, Workmen's Compensation Vol. 12, p. 308 (§ 2532). Thus it would appear that by equating "probably did" with "could have" some courts have been less liberal than we.

doctor said physical exercise was a factor, another said it could be a factor, a third said it probably was a factor. In other words, doctors seldom, if ever, say without reservation that physical exertion does precipitate a coronary occlusion, so I believe it is incumbent upon the courts and the Workmen's Compensation Board to use common sense in the interpretation of a doctor's testimony.

We have not held that testimony of a doctor must be absolute. In fact, in the Grimes case we said: "The facts or hypotheses on which the professional witness testifies need not be conclusive. They are sufficient if in his opinion they indicate the cause within reasonable probability. The claimant is not required to prove his case beyond a reasonable doubt." Whether the conditions possibly or probably could have caused the injury is purely a question of degree. Each requires speculation. At any rate, I feel that we have gone so far in heart attack cases that we should not quibble over the testimony of a reluctant doctor.

The question before us is whether there was sufficient testimony to justify the finding made by the Workmen's Compensation Board. The doctor who testified was as reluctant as any of his brothers to state that the conditions existing caused the coronary occlusion. However, despite his vacillation, he did make the following statement:

"A man who has engaged in a similar occupation over a period of a year or thereabouts could in that interval have progression of coronary arterial disease to the extent that the conditions that existed on the day of his death *would* have been sufficient to induce a fatal occlusion. Those conditions were the type of work he was doing, the heat of the day, which concentrated his circulating blood because of his perspiring."

It was proved that the day was hot, that Robinson was perspiring, and that he had

probably been digging ditches. Those are the conditions the doctor was discussing. He had already stated that Robinson had a pre-existing heart condition which doubtless had progressed during the year Robinson worked for the appellant. The doctor said that those conditions *would* have been sufficient to induce a fatal occlusion. Certainly this is sufficient to sustain the finding of the Board.

I agree the Board was in error in rejecting the doctor's thesis concerning the pre-existing condition which was aggravated by the injury. The finding of the Board should be sustained and the award apportioned according to the contribution of the injury to the disability.