**INLAND STEEL COMPANY, Appellant,**

**v.**

**Merica JOHNSON (Widow of Leo Johnson), et al., Appellees.**

Court of Appeals of Kentucky.

March 7, 1969.

Rehearing Denied May 9, 1969.

Harry C. Campbell, Pikeville, for appellant.

Robert J. Greene and G. C. Perry, III, Paintsville; Cordell H. Martin, Hindman; J. Keller Whitaker, Frankfort, for appellees.

PALMORE, Judge.

Leo Johnson died of coronary thrombosis while working in the appellant company's coal mine. A workmen's compensation claim by his widow and children culminated in a dismissal based on a finding by the board that they had failed to prove "that the decedent's work activities caused or brought about the coronary thrombosis which resulted in his death." The company appeals from a judgment of the Knott Circuit Court setting aside the final order of the board and remanding the case for further consideration.

The circuit court found as a fact that there was a partial causal relationship between Johnson's work and his death. Though we might readily agree with that conclusion, in order to sustain it we must find that the evidence was of such persuasive force that it was clearly unreasonable for the board not to be convinced by it. Lee v. International Harvester Company, Ky., 373 S.W.2d 418, 420 (1963).

At the time of his death Johnson was 47 years old. He had been a coal miner all of his adult life and had been employed by the appellant company for 17 years. According to his widow he had never lost any time from work by reason of disability except for a brief period of hospitalization for a hernia operation. She may, however, have been mistaken in this respect, because the record shows that in 1957 he was in the hospital for six days with pain in the left lower chest, which was finally diagnosed as pleurisy, and in 1960 spent several days in the hospital with a fever of unknown etiology and acute rheumatoid arthritis of the right thumb and index finger.

Johnson was stricken suddenly and without previous warning just after midnight of February 1–2, 1965, and within 15 to 30 minutes after he had beaten a large stone to pieces with a 16-pound sledgehammer. He complained of "hurting all over," particularly in his arms, and after resting for a few minutes attempted to

resume his regular task of operating a mine car but almost immediately suffered another or further seizure and fell off the car to the side of the tracks. He was dead within moments. An autopsy disclosed a fresh thrombotic occlusion of the right coronary artery, evidence of a pre-existing arteriosclerotic condition, and an old myocardial infarction adjacent to the left coronary artery. There was no evidence that he had consciously experienced any previous symptoms of heart disease unless the condition for which he was hospitalized in 1957 actually was a heart attack (as it probably was) instead of pleurisy.

The autopsy was performed by Dr. W. C. Morris, a pathologist, of Pikeville, Kentucky. After describing the clinical details, he was asked whether "overexertion or hard work immediately before he had the coronary would have brought about the coronary more suddenly," to which he replied as follows: "That is entirely possible, yes. In a heart case, as we term a heart case that has had previous heart trouble, or is under treatment, has more restricted activity. That is the general practice." He further testified as follows:

Q– "Do I understand you to say it is quite possible that the work of the employee or the overexertion could have possibly caused the coronary occlusion and the death here of this claimant?"

A– "Yes, that is entirely conceivable. In other words, I have never had any symptom of any previous trouble, but I don't know, in the type work I do I couldn't turn around and go and do what this man was doing because I would probably have a coronary, too. Or, if I went out and tried to play a game of tennis I would probably have a coronary. You can have one without any previous damage, too, and it can be due to sudden exertion or it can—well, the heart is just a very important organ and an awful lot of things can happen to it."

On cross-examination Dr. Morris explained his position in this manner:

Q– "Doctor, did you feel that the examination you made, and the diagnosis you made as to the cause of death being coronary occlusion, was caused by or brought about by his man's work?"

A– "This is drawing a conclusion which the anatomic pathologist is not supposed to do, actually, Mr. Francis. We report the findings, and then it is up to the interpretation of the attending physician. In other words, we are a doctor's doctor. We do the strict anatomical and clinical testing, and, of course, we see so much, and we read, but our job is to report just what we find."

The principal medical witness for the claimants was Dr. Franklin B. Moosnick, of Lexington, Kentucky, a member of the faculty at the University of Kentucky Medical School and a specialist in internal medicine. The opinion and order of the board denying the claim quotes certain excerpts from Dr. Moosnick's testimony with the comment that at best it "merely shows that the work in which the decedent was engaged could have precipitated the coronary thrombosis. This is not sufficient testimony upon which to base an award. Kelly Contracting Company v. Robinson, Ky., 377 S.W.2d 892." It is our view that this interpretation rather underrates the evidence in question. Though Dr. Moosnick was careful not to assume a dogmatic position, we think the fair import of his testimony was that Johnson's strenuous physical activity just prior to the fatal onset probably was a precipitating factor. We quote, for example, this concluding statement given on direct examination:

"In this instance I think it is within the realm of probability that this man, with coronary disease and with some fresh occlusion, had that occlusion converted into a clinically evident situation by extreme work or discrete or extreme demand upon himself of whatever type,

that the resulting ischemia or lack of adequate blood flow, or anoxia, which is lack of proper oxygen content, may have disturbed the pacemaker and conduction system to the point that a fatal arrhythmia resulted. I can state on the basis of the ramifications I have already spoken about that such a sequence in events may indeed have occurred, and that one could not deny that such a sequence of events did occur."

And on cross-examination:

"It could have happened at any time. I'll go further, I'll grant you it could have caused his death sitting in his own living room. The fact that this man was working and apparently—working hard, would, it seems to me,—make him more liable to converting this potential situation. In other words, he has an actual occlusion, but it has not infarcted, it has not produced symptoms. Then something occurs which converts this latent situation into an actual situation, which we have testimony which did occur as far as the bystanders could see, and then in a rapid sequence this man underwent some acute happening which took his life."

Dr. J. L. Patterson, a general practitioner of Wheelwright, Kentucky, was the physician who was called to the scene and who pronounced Johnson dead. He testified as follows:

Q– "In your opinion, sir, was this condition which caused Mr. Johnson's death related to his work in any manner?"

A– "No, sir."

Q– "Why do you say that?"

A– "Coronary occlusion is more generally observed to develop in a person of a sedentary life rather than in a person with a real active life."

\* 　 \* 　 \* 　 \* 　 \* 　 \*

Q– "Do you agree that this opinion expressed by Dr. Morris is one of a very general and definite possibility in this case?"

A– "No, I wouldn't agree to that at all."

We have quoted the medical testimony at some length in order to illustrate the basic problem that is presented by the heart attack cases. This one has been well and fairly briefed on both sides. The employer stands ultimately on the principle discussed in Lee v. International Harvester Company, Ky., 373 S.W.2d 418, 420 (1963), which is paraphrased at the beginning of this opinion. Even if Dr. Moosnick's testimony should be regarded as a positive opinion that the work incident probably contributed to the fatal attack, its probative force is challenged by the countervailing opinion of Dr. Patterson. Under the circumstances we are unable to rule as a matter of law that the board should have rejected the opinion of Dr. Patterson and accepted that of Dr. Moosnick.

In Kelly Contracting Co. v. Robinson, Ky., 377 S.W.2d 892, 894 (1964), it was observed that the factual basis for the unsuccessful claim in litigation may really have been as meritorious as were those in Terry v. Associated Stone Co., Ky., 334 S.W.2d 926 (1960), and Grimes v. Goodlett & Adams, Ky., 345 S.W.2d 47 (1961), in which the claims were allowed, but that this court could not in one case draw upon the medical opinions by which it has been enlightened in others. Counsel for Mrs. Johnson now proposes, however, that we do just that, and quit the unrealistic practice of viewing each of these cases in a test tube as if there had never been another one like it. The prospect is tempting. Beyond cavil it is a shame that claims of equal merit should stand or fall on just how the medical witnesses choose to portray their conclusions [1] on a question to which the an-

---

1. "Physicians differ in the degree of caution or lack of caution with which they phrase their opinions, and one man's 'possibility' may be equivalent to another's 'probability.' It is submitted that, except where the use of the term "possibility," or other words of similar import, is indicative of an over-all speculative viewpoint, the mere employment of such language should not be, as it is in some

swer is fast becoming a matter of common knowledge to laymen in general—worse still that the tide should ebb and flow according to the changing composition and philosophies of the board itself.

We are asked to hold as a matter of law that which (Dr. Patterson to the contrary notwithstanding) most competent and impartial medical experts would privately concede as a fact—that when a man with pre-existing heart disease (arteriosclerosis, at least) sustains a coronary occlusion after strenuous physical exertion, the exertion probably is a contributing factor. The resulting disability would, perforce, be compensable.

We are firmly convinced that there must be a greater consistency in the treatment of this type of case. We are equally convinced, however, that it must not be achieved through a rejection of all claims for death or disability resulting from heart attacks. Even though a pre-existing disease condition which has developed over a period of years may be the major and predominate cause, and a fatal or disabling attack at some time or place is inevitable, yet if a substantial physical effort is a likely contributing factor at the time it actually does occur, it is reasonable to conclude that the ensuing death or disability is in some degree hastened or accelerated by the physical exertion. That makes it compensable, though the portion to be assessed against the employer as between it and the Special Fund should be relatively minor.

In Hudson v. Owens, Ky., 439 S.W.2d 565 (decided February 28, 1969), we again reviewed this problem at some length and adhered to the same basic approach set forth in Lee v. International Harvester Co., Ky., 373 S.W.2d 418 (1963), supra. We recognize that it leaves room for the board to use its fact-finding power as an instrument of policy, which it ought not to do, but if that should happen the remedy

lies with the executive branch of government. There is, of course, in all cases the possibility that a fact-finding body will make a determination that seems to be against the weight of the evidence, but the statutes from which our power of review is derived in workmen's compensation cases limit the freedom of the courts to right all wrongs. Cf. KRS 342.285(3), 342.290 (1).

 Our conclusion is that the evidence did not force the board as a matter of law to find that Johnson's work contributed to his death.

The judgment is reversed with directions that the final order of the board be affirmed.

All concur.

---

states, a basis for disregarding the particular physician's testimony. Substance should prevail over form, and the expert's testimony should be examined in its total

meaning, rather than word-by-word." McNiece, Heart Disease and the Law (Prentice-Hall, Inc., 1961), p. 136.