John W. YOUNG, Commissioner of Labor, etc., et al., Appellants,

v.

L. A. DAVIDSON, INC., et al., Appellees.

L. A. DAVIDSON, INC., et al., Appellants,

v.

Cecil Robert RAY et al., Appellees.

Court of Appeals of Kentucky.

Feb. 19, 1971.

Martin Glazer, Dept. of Labor, Frankfort, for appellant Special Fund.

Gemma M. Harding, Dept. of Labor, Louisville, for Special Fund.

William S. Bowman, Louisville, for appellant L. A. Davidson.

John Frith Stewart, Louisville, for appellee Cecil Ray.

REED, Judge.

This is another case which involves the compensability under our workmen's compensation law of a heart attack that caused disability.

These consolidated appeals arise from a decision of the circuit court which upheld the Workmen's Compensation Board's award of compensation benefits to Cecil Ray for permanent and total disability; the circuit court, however, reversed the Board's finding that the award was to be paid solely by the employer for which Ray was working at the time of the alleged compensable injury without any apportionment of liability for payment by the Special Fund. Both the employer, L. A. Davidson, Inc., and the Fund appeal from the circuit court's disposition. We affirm the circuit court.

Cecil Ray, the employee, was hired by the Davidson Company, the employer, to operate a crane. Shortly after reporting for work, Ray noticed that an exhaust stack from the crane's diesel engine had a hole in it, and he complained that some fumes were escaping into the cab where he worked. Ray made several complaints to his foreman about the defective condition. He and a helper made a make-shift unsatisfactory repair which did not stop the leak completely. Ray kept the large sliding door of the cab next to the operator's seat open when he operated the crane. After only six days of employment, Ray suffered a major heart attack while working on the job. On the morning of the incident, Ray reported for work about 6:30 a.m. and started operating the crane in the same manner he had done on the previous occasions. The day was warm and foggy. Right after starting the rig, he experienced a "queasy" feeling in his chest for fifteen or twenty minutes; about 10:30 in the morning, he suffered the attack.

The only medical evidence adduced before the board was the testimony of Dr. Charles Smith, the treating physician, who was called by Ray in support of his claim, and the report of and the testimony given by Dr. F. Albert Olash, a cardiologist, who had been appointed by the board pursuant to KRS 342.121, when the employer brought the Fund into the proceedings for possible apportionment of liability for payment. (KRS 342.120). Ray, of course, testified in his own behalf, and his foreman

also testified and corroborated the testimony about the defective crane and Ray's concern over its proper repair.

Dr. Smith's testimony may be fairly summarized by saying that he strongly suspected carbon monoxide from the crane's exhaust triggered the attack. Cross-examination, however, established that the "probability" of carbon monoxide gas as the causative agent was reduced to "possibility" when the element of the openness of the work environment was considered. A close reading of Dr. Smith's testimony in its entirety reveals a great degree of caution on his part in the language that he chose by which to express his opinions.

The board-appointed physician, Dr. Olash, was more direct and definite. Although he used the word "conjectural," this word was qualified by the phrase "you might say" when he was describing on cross-examination how he arrived at his opinion concerning the significance of the work connection in relation to causation of the attack in the medical sense. Dr. Olash concluded that the breathing of carbon monoxide gas in sufficient amount was too speculative to be considered, but he also definitely believed that the "stress, strain, and anxiety" involved in the performance of the job under the undisputed conditions present probably precipitated the attack. Neither the employer nor the Fund presented any medical evidence.

█ The medical evidence presents the constant problem with which the board or the court is faced in this type of case. The physician uses language couched in the frame of reference of his training; the lawyer asks the physician questions phrased in a context of legal concepts. For example, in this case, the cross-examiner of the physician on occasion inquired about whether medical "certainty" existed, which is not required, but included an alternative standard in the same question, "or reasonable medical probability," which is required. On direct examination, opposing counsel asked the physician for an opinion based on "medical probabilities or possibilities." A physician could then understandably labor under the mistaken impression that these standards are synonymous. While we must insist that medical-opinion evidence be founded on probability and not on mere possibility or speculation, the realities of the problem of semantics must be taken into account. In Inland Steel Company v. Johnson, Ky., 439 S.W. 2d 562 (1969), we cited in a footnote to the opinion an excerpt from a discussion of the problem in McNeise, Heart Disease and the Law [Prentice-Hall, Inc., (1961), p. 136]. The thrust of that discussion is that speculative viewpoints must be rejected; however, substance should prevail over form, and the expert's testimony should be examined in its total meaning, rather than word-by-word.

█ We reviewed the heart attack cases in the workmen's compensation field in our recent opinion in Hudson v. Owens, Ky., 439 S.W.2d 565 (1969). In Hudson we did not merely adhere to the same approach set forth in Lee v. International Harvester Company, Ky., 373 S.W.2d 418 (1963) as pointed out in the Johnson case; we also plainly declared that medical evidence alone, whether contradicted or uncontradicted, is not absolutely controlling on the board concerning the issue of causation in these cases. The significance of work connection as sufficient causation for compensability under the workmen's compensation system is a legal concept. The Johnson case quite properly points out that misuse of the fact-finding power by the board arrogates to that administrative body a policy-making function which it should not have, but that the remedy for such abuse rests with the executive branch of government under its appointive power.

█ Our review of the medical evidence as it relates to the issue of the contribution of Ray's work to his disability convinces us: first, that Dr. Smith's testimony affords no substantial evidence of medical causation by the work; second, that Dr.

Olash's testimony, when considered in its entirety, does furnish substantial evidence that the work more likely than not contributed to the disability from the viewpoint of medical causation.

Aside from the medical evidence, the board was apprised by the evidence of the existence of circumstances which it had a right to consider in resolving the legal issue of contributing causation by work. The attack occurred on the job and while the employee was performing the tasks of the employment. The machine which he operated was in a defective condition, and he was concerned over the potential danger, at least, of the presence of carbon monoxide gas. Although the board specifically referred to defective machinery and the fumes (caused by the diesel fuel) in its opinion, we read its actual and decisive finding to be that the work contributed to the disability because it triggered the attack. When the total evidentiary picture is considered, we agree with the circuit court that this finding cannot be rejected on judicial review as clearly erroneous.

■ The remaining question is whether the award is required to be apportioned between the employer and the Fund under KRS 342.120. That statute requires apportionment where the work-connected injury arouses or brings into disabling reality a pre-existing dormant, nondisabling disease condition. The evidence without contradiction established that Ray suffered from an underlying coronary condition (atherosclerosis) that the Fund admits in its brief is a severe, progressive heart disease. Ray was unaware of the disease; he had no prior attack, and the disease was not discovered or diagnosed until after the heart attack which he suffered on the job. He had no previous disability.

Dr. Smith and Dr. Olash agreed that Ray's disease condition was a major element in the heart attack and the disability. The board refused to direct apportionment because it said that "industry takes a man as it finds him." That is surely correct. The statute, however, allows the employer to shift part of the burden to the Fund when a dormant, nondisabling disease condition is aroused or brought into disabling reality by a work-connected injury. Under the evidence that is precisely what occurred in this case.

We are at a complete loss to understand the Fund's argument concerning the apportionability of the award. The Fund states that the pre-existing atherosclerosis is "a manifest, pre-existing condition that develops over a long period of time due to wear and tear and the aging process of man." Dr. Olash testified that the disease can be found in infants; that it is not due to wear and tear or aging. Ray was 42 years old at the time of his heart attack. We held apportionment proper in those heart-attack cases where a pre-existing dormant, nondisabling disease condition was triggered into causing disability in Hudson v. Owens, Ky., 439 S.W.2d 565 (1969), in which we approved the approach directed in prior cases cited therein. In the Johnson case (Ky., 439 S.W.2d 562), we emphasized the frequency of the necessity of apportionment in compensable heart attack cases.

Apparently, employers are prone to argue that any pre-existing nondisabling condition should be held to be caused by disease. Now it appears that the Fund is prone to argue that any nondisabling disease is either "manifest" or is a nondisease condition caused by "wear and tear." We will continue to give a rational construction of the statute which respects its language and the context in which the words are used. This was a clear case for apportionment and the circuit court correctly held that the board should proceed to determine and direct the required division of liability between the employer and the Fund.

The judgment is affirmed.

All concur.