WAL–MART STORES, INC., Appellant,

v.

Roberta SMITH; Hon. John W. Thacker, Administrative Law Judge; and Workers' Compensation Board, Appellees.

No. 2007–CA–001469–WC.

Court of Appeals of Kentucky.

June 13, 2008.

W. Bryan Hubbard, James E. Skaggs, Clark & Ward, Lexington, KY, for appellant.

McKinnley Morgan, Morgan, Madden, Brashear & Collins, London, KY, for appellee.

Before CAPERTON, NICKELL, and TAYLOR, Judges.

## OPINION

NICKELL, Judge.

Wal–Mart seeks review of a June 22, 2007, opinion of the Workers' Compensation Board ("Board") affirming an opinion of Administrative Law Judge John W. Thacker ("ALJ"). The ALJ awarded benefits to Roberta Smith ("Smith") for a work-related low back injury and for psychological trauma, both of which flowed from an explosion that shook the Wal–Mart where Smith was employed as a

greeter. While the ALJ concluded Smith's back injury was temporary, he found she qualified for a fifteen percent permanent psychological impairment rating for which income benefits, enhanced by a multiplier of 3.8,[1] were appropriate. Alleging conflicting evidence, Wal–Mart argued first that Smith failed to prove she suffered a work-related injury and second that Smith was erroneously awarded benefits for a psychological condition in the absence of any physical injury. The Board affirmed the ALJ's opinion and Wal–Mart has now appealed to us. For the reasons explained herein, we affirm.

## THE FACTS

The Wal–Mart Supercenter in Hazard, Kentucky, sits atop a reclaimed strip mine. Blasting still occurs in the vicinity. At about 10:30 a.m. on October 19, 2005, a mining blast[2] shook the store and caused debris to penetrate the roof. A customer inside the store told a television news crew she thought the blast was an earthquake. Another said she thought it was bullets or gunshots; she said there was a "big noise" followed by a "big shake" and "it scared me to death." Soon after the blast and the shower of debris subsided, the Wal–Mart store was closed to allow clean-up to occur.

Smith was born August 23, 1941. She has completed the tenth grade. She was working inside the Wal–Mart as a door greeter at the time of the blast. While Smith was uncertain of exactly what happened to her, she experienced neck and back pain and a severe headache soon after the blast. She surmised she must have been thrown into or fallen against a large ice chest inside the store. She was placed in a neck brace and transported from the store via ambulance.

Smith filed a Form 101 on November 17, 2005, alleging her "back, neck and nerves" were injured when she was "knocked backward following an explosion near the Wal–Mart store." She was treated with prescription drugs and diagnostic studies. According to the form, Smith joined the workforce in 1963. She has worked as a waitress, assistant restaurant manager, nightclub manager and housekeeper. She first worked at Wal–Mart during the 2002 holiday season and then returned to Wal–Mart in 2003 as a part-time cashier and ultimately as a full-time door greeter. Smith has not worked since the blast. She testified at her deposition that she receives regular Social Security retirement benefits.

Smith had health issues prior to the October 2005 explosion. She is a breast cancer survivor. She was diagnosed with high blood pressure in 2002. She was treated for chronic obstructive pulmonary disease (COPD) between 1997 and March 2005 and remains under a doctor's care for COPD. According to her Form 101, since 1998 she has received treatment and remains under a doctor's care for her back, neck and nerves although she denies having any sort of trauma to her neck or back prior to the explosion. In 2002, Smith hit

1. Pursuant to Kentucky Revised Statutes ("KRS") 342.730(1)(b), Smith's fifteen percent permanent partial impairment was multiplied by a factor of one. Under KRS 342.730(1)(c)(1), Smith's income benefits were multiplied by a factor of three because she was unable to return to work. These benefits were then enhanced by another eight-tenths of a percent under KRS 342.730(1)(c)(3) because Smith was more than sixty years of age at the time of her injury and she had completed only the tenth grade. Ultimately, her benefits were enhanced by a total of three and eight-tenths (3.8) percent.

2. It does not appear a third-party action claiming negligence was filed against the mining company.

an oncoming car head-on and broke her left foot. At the time of the explosion she had a prescription for Lorcet for back pain but rarely took it. After the blast she takes Lorcet every six hours and still has pain. She has had a prescription for Paxil since 1997 for panic attacks and anxiety. Smith testified at the final hearing she had not had a panic attack in the six years prior to the explosion, but has had several since the blast. Smith has been prescribed Klonopin for her nerves since about 2002 when her husband experienced a heart attack.

Smith was transported to the emergency room via ambulance soon after the explosion. A CT scan of her head was negative. An MRI of her lumbar and cervical area, taken two days after the blast, revealed only arthritic changes. She had no range of motion difficulty although her paralumbar area was tender.

Eight days after the explosion she was seen by Dr. Leelamma Varkey at Appalachian Regional Healthcare, Inc. (ARH). In describing the blast she stated:

> there was some blasting nearby and rocks came in, but the rock did not hit her. Because of the sudden sound and blast, she was shaken and she fell down. She said that she was near the ice machine and her back hit the ice machine. She said that she does not remember anything that happened after that. She was told by people around her she was unconscious. She is now complaining of back pain and also nightmares. She said that she cannot sleep and all of these things are coming back to her.

Dr. Varkey suspected Smith's nightmares were Post Traumatic Stress Disorder (PTSD). He doubled her Paxil and Klonopin dosages and referred her to a psychologist. Due to a history of anxiety and depression, the psychological evaluation was delayed for two days. Injections were recommended, but workers' compensation denied the claim and Smith determined she could not afford to pay for them herself. At her deposition, Smith testified she had been referred for psychological counseling but workers' compensation had refused to pay for it and she said she could not afford to pay for it herself. Smith also testified Wal–Mart refused to pay a hospital bill in the amount of $4,453.41.

In describing her daily symptoms, Smith stated at her deposition:

> I constantly have back pain. It's— sometimes it increases. It gets bad. I may try to raise up and it's like a catch in it, but I have a ache laying down, sitting, standing. They're (sic) no pattern for it. And it's—sometimes it's not half as bad as other times. And my neck: I'm not having all that much problem with it, but it's my back that I'm really having the problem with.

She went on to explain she did not like taking Lorcet because it is addictive. She stated,

> there's (sic) some days I have to take as high as three. Then they (sic) may be a day that I take, you know, one or two. And before I got hurt, even though I, you know, I had the Lorcets, I didn't—I didn't take them hardly ever. And the Klonopins: They—they've brought them up now to three a day.

We now recite the ALJ's summation of Smith's testimony and the medical evidence:

**1. Testimony of the plaintiff.** The Administrative Law Judge has considered all of the testimony of the plaintiff at her deposition and the final hearing including the following. The plaintiff testified by deposition on March 8, 2006. The plaintiff first worked for Wal–Mart in 2002 and began work in October of 2003 as a cashier part-time. She made

the transition to full-time status and moved to the position of door greeter. She was stationed at the door by herself. Theresa Caldwell was her immediate supervisor and Greg Salyer was the store manager. She worked the 7:00 a.m., to 4:00 p.m., shift. On October 19, 2005 at somewhere around 10:30 there was a very bad explosion. It just rocked the building and it felt like the floor was vibrating. She stated it was just pitching her around and she was pretty sure that she hit an ice machine but she couldn't honestly say that she did but she had to hit something because her back right away started bothering her. She stated there was a lady down at the door and she went to the door and she didn't know what she did but she did remember going to the door to her. And then her supervisor, Theresa, came up to her and she said [Smith] go sit down you don't look good and about that time she started vomiting and went to the bathroom. She stated she realized that her back was hurt, was having pain in her lower back and her neck was real sore. An ambulance was called and she was taken to the Hazard ARH Emergency Room. She underwent MRIs of her low back and neck approximately two days after the event, on October 21, 2005. She was given pain pills, of (sic) Lorcets, and they increased the Klonopin that she was taking previously. She was taking Paxil for anxiety prior to the accident for panic attacks.

The plaintiff testified at the final hearing of September 26, 2006. The plaintiff testified that she was standing near the door next to the podium, heard a large explosion, the building shook and her back was hurting. Her supervisor, Theresa Caldwell, told her to sit down and at about that time she started vomiting. After the explosion happened she was having pain in her back and her left leg was hurting and she had a bad headache. She testified that her current problems are that her nerves have got a lot worse and her back is a lot worse. Before the accident she was taking a 0.5 Klonopin and now she is taking a 1.0 Klonopin, which is a lot stronger. She was on medication for her back prior to the injury but she did not take the pills all the time. Now she takes Lorcet every six hours, and they do not completely take away all of her pain. She testified that she is limited on physical abilities and can't run a sweeper or clean windows, has trouble walking, cannot lift over six or eight pounds and cannot sit for more than half an hour. She stated that she was jarred into something but cannot remember what it was and surmised it was an ice machine.

2. **The medical report of Dr. Robert Hoskins.** The plaintiff gave a history to Dr. Hoskins of being injured on 10/19/05 while working as a greeter at Wal–Mart in Hazard, Kentucky when she injured her spine when she fell backwards following a large rock blast nearby. She reported that the blast shook the floor and knocked her into the sharp corner of an ice machine. She was then taken to Hazard ARH by ambulance where she was examined and released. Diagnostic testing including MRIs dated October 21, 2005 of the cervical spine and lumbar spine. The MRI of the cervical spine was read as advanced degenerative disk changes at multiple levels and erosion involving the dens probably related to arthritis and the MRI of the lumbar spine was read as advanced degenerative disk changes including bulging disks at several levels most notably at L2–3 and L4–5. Dr. Hoskins' diagnosis included multilevel cervical degenerative disc bulging, degenerative facet joint disease, and neur-

al foraminal stenosis, cervical sprain/strain, cephalgia, multilevel lumbar degenerative disc disease, lumbosacral sprain/strain, and left lumbosacral radiculitis. Dr. Hoskins testified that with reasonable medical probability, the patient's injury was the cause of her complaints; that using the most recent AMA Guides the patient's present whole body impairment is 10% and the patient did have an active impairment prior to this injury, with active impairments to the cervical and lumbar spines, which were asymptomatic and not limiting her ability to perform ADLs. Dr. Hoskins opined that the plaintiff retains the physical capacity to return to the type of work performed at the time of the injury.

3. **The medical reports of C. Christopher Allen, Phd.** Dr. Allen examined the patient on May 2, 2006. Dr. Allen's diagnosis was post traumatic stress disorder, chronic and that the patient symptoms are directly related to her experiences in a Wal–Mart Department Store in October of 2005. Dr. Allen further opined that it is likely that a component of the patient's emotional distress is related to her pain-related difficulties and that component will likely be experienced as long as she experiences pain. Dr. Allen opined that the patient had a 15% impairment, using Chapter 14 of the most recent AMA Guides to Evaluation of Permanent Impairment and the patient's classification of impairment is Class 2. He further opined that the patient did not have an active psychological impairment prior to the injury and, that within reasonable medical/psychological probability, the patient's psychological complaints are caused by the work-related injury. At this point, the patient is not capable of performing adequately in any workplace with the physical characteristics of Wal–Mart without significant psychological distress and would need frequent breaks and provision for brief counseling support on the job. Dr. Allen stated Ms. Smith was evaluated in this office on 5–01–2006[3] and was found at that time, unfortunately to have responded to psychological test items either inconsistently or in a way which suggests possible exaggeration of functional complaints.

4. **The medical records of Dr. Ronald Mann.** Dr. Mann's records include treatment notes of multiple visits for ptsd and neck and back pain secondary to an injury.

5. **The medical records of Dr. Leelamma Varkey.** Dr. Varkey saw the patient at the Hazard ARH Family Health. On October 28, 2005, Dr. Varkey noted that there was some tenderness in the paralumbar area; otherwise, there was no range of motion difficulty, he noted that generally the patient was very anxious, she was sitting and crying, very upset, and he referred her to a psychologist. Dr. Varkey saw the patient on October 31, 2005 and opined a CT scan done of the head and neck in the ER was negative. He found tenderness in the paraspinal area in the low back LS spine area. Dr. Varkey saw the patient on November 17, 2005, and his assessment was that there was arthritic changes in the cervical vertebrae and low back pain and he told the pa-

---

**3.** Dr. Allen, a licensed clinical psychologist, evaluated Smith twice, first on May 2, 2006, and again on August 16, 2006. A separate account of the May evaluation is not included in the record. In his written report of the second evaluation, Dr. Allen stated he thought Smith was exaggerating her responses during their May meeting but since her August responses were consistent with those she had given previously, Dr. Allen deemed Smith's profile to be valid.

tient that these constitutes (sic) degenerative changes and it may not be due to the injury and this injury could have probably triggered the pain. By letter of November 23, 2005, Dr. Varkey noted that Ms. Smith had a history of chronic back (sic) for which she was being treated with pain medication and she was working at that time and the injury did not cause any acute finding which would hinder her from working with any restrictions. He also noted that she gives a history of depression and anxiety for which she was taking Paxil and Klonopin. He increased her Klonopin and referred her to a psychologist. He noted that her physical condition did not require her to be completely off from her type of work.

**6. The medical record of Dr. Kenneth B. Graulich.** Dr. Graulich performed an independent medical examination on March 6, 2006. Dr. Graulich performed an evaluation and records review. He opined that there was no lumbosacral paraspinous muscle spasm. She was severely tender to very gentle palpation to the right of the lumbosacral spine and had moderate to severe pain with all lumbar movements in the standing position. Dr. Graulich's impression was 1) simple whiplash injury to the lumbar spine superimposed on moderate degenerative changes and a history of preexisting low back pain most likely due to age related degenerative arthritis, and this should have been a mild soft tissue injury with no reason she should not have returned to prior state by this time; 2) simple whiplash injury to the cervical spine superimposed on moderate prior degenerative changes per the imaging study reports, essentially resolved by history, with the same statements regarding mechanism of injury and severity as given in impression # 1 apply here as well; and 3) possible post-traumatic stress disorder versus exacerbation of underlying and preexisting anxiety/depressive disorder. He further opined that there is definite evidence of preexisting low back pain and a preexisting dormant potentially painful condition (sic) the neck; he did not find that the patients (sic) current neurologic complaints and overall state of health are causally attributed to her work activity at Wal–Mart. Her lumbar injury would appear to have been quite mild and she should have returned to her preexisting state within a short period of time, even if it were not mild but rather a severe soft tissue injury she should have returned to her preexisting state in 6–8 weeks. He would place no work restrictions on the patient due to the nature of the injuries she allegedly suffered in the work incident; the prognosis is that the patient has recovered from any neurologic injury suffered in the incident; and the patient's description of the mechanism of injury would agree with her physical condition if she either jerked her back as a response to the blast or mildly struck her back on the ice chest and in either case the injury would have been minor and relatively rapid recovery expected.

**7. The medical report of Dr. Douglas Ruth.** Dr. Ruth examined the patient on March 28, 2006. Dr. Ruth's overall diagnosis of the patient's current psychological condition was a presumptive psychiatric diagnosis, based upon the history provided by Mrs. Smith and with the assumption that her account is valid, of post traumatic stress disorder. He opined that the psychiatric symptoms she described currently are compatible with a diagnosis of post traumatic stress disorder as the result of the emotional trauma associated with the October 19, 2005 incident; and he could

not assign an impairment rating until treatment and a state of maximum medical improvement is attained. Dr. Ruth further opined that, should a hypothetical impairment rating be desired, based upon her current psychiatric symptoms, according to the AMA Guides 5th Edition, she has a Class 2, mild psychiatric impairment which translates to a 6% psychiatric impairment.

8. **Testimony of Greg Salyer.** Mr. Salyer testified by deposition of September 25, 2006. Mr. Salyer is the store manager for the Wal–Mart in Hazard.[4] On October 19, 2005, Ms. Smith was working on the general merchandise side of the store. Mr. Salyer testified regarding a video tape of the general merchandise side of the store on October 19, 2005 with a time of 9:46, showing the people greeter, Roberta Smith. The tape showing the sidewalk debris just hitting the sidewalk is timed 10:17:28. The court reporter noted a mix-up in exhibits A & B of VHS tapes with exhibit A video tape being filed and exhibit B video tape not being filed. The video tapes do not show everything in the store during the time period in question and the video tapes do not show the plaintiff at all times either.

9. The defendant/employer filed an AWW–1 with an average weekly wage of $209.09.

10. The plaintiff filed a video of WYMT television showing the plaintiff in a neck brace and being taken to an ambulance.

Deeming Smith's testimony to be the most credible proof of whether she was affected by the blast, and finding Smith's testimony to be supported by the medical opinion of Dr. Graulich, the ALJ found Smith sustained a work-related injury to her low back as a result of the October 19, 2005, blast. However, the ALJ concluded it was only temporary since Dr. Graulich stated the simple whiplash injury to her lumbar and cervical spine should have healed in a maximum of six to eight weeks.

The ALJ further found Smith suffered a fifteen percent permanent partial impairment due to PTSD resulting from emotional trauma. Smith testified she has been plagued by nightmares since the explosion. The ALJ found the medical opinion of Dr. Allen to be the most credible on this point. In a report dated August 23, 2006, Dr. Allen wrote:

> [t]hese results, therefore, strongly confirm a diagnosis of PTSD, Chronic, provisionally rendered in May of 2006. It is clear, as well, the patient reports significant pain-related difficulties which likely reciprocally interact with her emotional state. It is quite clear, moreover, that the patient's symptoms are directly related to her experiences in a Wal–Mart Department store in October of 2005.

Dr. Allen's diagnosis of PTSD was confirmed by Dr. Ruth, a physician certified in psychiatry, who wrote in his report dated March 31, 2006, the psychiatric symptoms described by Smith resulted from "emotional trauma associated with the 10/19/05 incident." Dr. Allen opined Smith could resume work physically but not emotionally. He stated she could not return to work at Wal–Mart or a similar establishment without "significant psychological distress" and without frequent breaks and access to on-site job counseling. While Dr. Allen assessed a fifteen percent impairment rating, Dr. Ruth said he could not assign a disability rating until Smith reached maximum medical improvement.

The ALJ awarded Smith temporary total disability benefits in the amount of

---

**4.** Salyer was not on store premises during the blast.

$139.39 for a period of eight weeks based on Dr. Graulich's statement that Smith's simple whiplash injury to her back and neck should have healed within a maximum of eight weeks. Due to Smith's psychological symptoms, the ALJ also awarded her weekly income benefits for permanent partial disability based on a rating of fifteen percent multiplied by a factor of 3.8 which amounts to $79.46 for the 425 weeks permitted by Kentucky Revised Statute (KRS) 342.730(1)(d). Pending appeal, Wal–Mart has paid nothing.

Wal–Mart filed a petition for reconsideration seeking a correction regarding the two store surveillance videotapes it had submitted as evidence. In denying the petition, the ALJ wrote in relevant part:

[t]he Administrative Law Judge has received video tapes A & B and the Summary of Evidence Presented should be amended accordingly. The tapes are contemporaneous with the incident on October 19, 2005 and show the interior and exterior of the Wal–Mart Store at the relevant times. The tapes have a jerky motion and are composed of shots every three seconds. The tapes show the plaintiff at her work station standing, walking and on a stool next to a cooler. The tapes are not of a sufficient quality to note floor vibration or lack thereof, due to the gap between shots.

2. The Administrative Law Judge finds that he cannot rely on the video tapes to disprove that the plaintiff suffered a jerk due to floor vibration as a mechanism of injury even if she did not get thrown against the cooler. Dr. Graulich opined that the mechanism of injury was either a jerk or strike against the cooler. And, the plaintiff testified as to the vibration and being pitched around, but was unsure if she struck the cooler.

3. The Administrative Law Judge finds the testimony of the plaintiff and Dr. Graulich to be the most credible that the plaintiff suffered an injury due to the floor vibration resulted in a whiplash injury and this physical injury resolved, although the resulting psychiatric condition has not resolved.

As a result of the petition, the ALJ's original opinion was corrected, but the benefits award was unchanged.

Wal–Mart appealed the ALJ's opinion to the Board arguing store surveillance videotapes proved the blast did not affect Smith in any way. Wal–Mart also emphasized inconsistencies in Smith's many descriptions of her reaction to the blast in the Form 101 she signed, her statements to doctors, her deposition, and her testimony at the final hearing. After reviewing the evidence, the Board stated the ALJ's opinion was based on substantial evidence and there was no reason to disturb it.

Wal–Mart's second claim, based upon the definition of "injury" found in KRS 342.0011(1), was that Smith could not receive benefits for a psychological condition absent a physical injury. The Board stated permanent physical harm is not statutorily required for an award of benefits due to a psychological change. Since testimony from both Dr. Allen and Dr. Ruth supported the onset of PTSD following the blast, the Board reasoned the ALJ's findings and conclusions were not outside the realm of reason such that they had to be disregarded as a matter of law. Hence, the Board affirmed the ALJ's opinion and this appeal followed.

### ANALYSIS

Wal–Mart advances two issues on appeal to this Court. The first is that the ALJ (and the Board) erroneously believed Smith's testimony even though she told multiple versions of how the blast impact-

ed her body and store surveillance videotapes showed she was not knocked to the ground and did not fall against the ice cooler. As the claimant, Smith had the burden of proving every element of her claim, including that her low back injury was work-related.

Under KRS 342.285, an ALJ's decision is "conclusive and binding as to all questions of fact" and the Board must not "substitute its judgment for that of the [ALJ] as to the weight of evidence on questions of fact." KRS 342.290 limits our scope of review to that of the Board and to errors of law arising before the Board. In *Caudill v. Maloney's Discount Stores*, 560 S.W.2d 15, 16 (Ky.1977), our Supreme Court confirmed a fact-finder may reject any testimony and believe or disbelieve various parts of the evidence, regardless of whether it comes from the same witness or the same adversary party's total proof. In *Paramount Foods, Inc. v. Burkhardt*, 695 S.W.2d 418 (Ky.1985), our Supreme Court reiterated the fact-finder has sole discretion to determine the quality, character, and substance of the evidence. Since the ALJ ruled in Smith's favor, to succeed on appeal, Wal–Mart must now demonstrate the ALJ's conclusion was not supported by substantial evidence. *Wolf Creek Collieries v. Crum*, 673 S.W.2d 735, 736 (Ky.App. 1984). As an appellate court, we will defer to the ALJ's decision and will intervene only if the ALJ has overlooked or misconstrued controlling legal authority or has evaluated the evidence in such a way that his opinion works a "gross injustice."

*Western Baptist Hospital v. Kelly*, 827 S.W.2d 685, 687–88 (Ky.1992). After reviewing the entire record, including the surveillance videotapes, and the relevant case law and statutes, we see no reason to disturb the ALJ's award of benefits or the Board's opinion affirming the ALJ's decision. Therefore, we affirm.

When evidence is conflicting, as it was in this case, it "is within the exclusive province of the ALJ" to determine what to believe and what to reject. *Square D Co. v. Tipton*, 862 S.W.2d 308, 309 (Ky.1993). Here, the ALJ found Smith's own testimony to be the most credible on the issue of whether she was injured. While there may have been variations in her accounts of what happened during and immediately after the blast, the basic components of her story remained the same. There was a sudden explosion, it shook the Wal–Mart, the floor vibrated [5] and immediately thereafter Smith experienced back and neck pain and a severe headache. Smith repeatedly admitted she did not really know what happened to her but merely surmised her back and neck made contact with the ice cooler because that was the only object near her and she experienced pain after the explosion. Dr. Graulich's report confirmed the pain Smith described would be consistent with jerking in response to the blast or mildly striking her back on the ice chest. Smith's testimony was substantial and sufficient to support the ALJ's finding of a work-related injury.

---

5. Without elaboration, Wal–Mart states in its brief to this Court, "[s]imple floor vibration was never asserted as a mechanism of injury." Based upon the record provided to us, Smith has maintained all along that the force of the explosion which shook the Wal–Mart caused her injury. An explosion strong enough to shake the building would include vibration of the floor. Nevertheless, Wal–Mart did not advance this argument in its petition for reconsideration or mention it in its brief to the Board. We will not consider for the first time on appeal an argument that was not previously presented to the ALJ or the Board for its consideration. *Kennedy v. Commonwealth*, 544 S.W.2d 219, 222 (Ky. 1976).

Wal–Mart makes much ado about its surveillance video and even states in its brief that it "clearly shows that [Smith] was completely unaffected by the blast event itself during and immediately after its occurrence." We have watched the surveillance tapes and they are anything but *clear*. They are a jerky series of still photos taken a substantial distance away from Smith. The tapes jump from one vantage point to another and the time stamp on the frames is suspect due to a discrepancy between the two cameras/recorders. As the store manager admitted during his deposition, the tapes do not capture everything that happened in the store before, during or after the blast and they do not depict Smith at all relevant times. In light of these flaws, the ALJ correctly discounted the value of the surveillance tapes since they could neither establish nor eliminate whether Smith sustained an injury or how it occurred.

Wal–Mart cites *Young v. L.A. Davidson, Inc.,* 463 S.W.2d 924 (Ky.1971) for the proposition that mere speculation about the cause or work-relatedness of an injury is insufficient to satisfy KRS 342.0011(1). It then chastises the ALJ for relying upon a statement by Dr. Graulich that jerking or mildly striking her back on the ice chest could have resulted in Smith's neck pain, back pain and headaches. We see no error here. The ALJ stated he found Smith's own testimony to be the most credible proof on the issue of causation and work-relatedness. He merely noted that Dr. Graulich's medical report and opinions supported Smith's statements about how she injured her back. We cannot say the ALJ's finding that Smith sustained a temporary work-related injury to her low back as a result of the blast was not supported by substantial evidence. Therefore, like the Board, we will not disturb the ALJ's opinion.

Wal–Mart's other complaint is that income benefits cannot be awarded for a permanent psychological condition unless there is a physical injury. As noted previously, there was substantial evidence upon which the ALJ found Smith's low back was injured by the blast. We have scoured KRS 342.0011(1) and the cases interpreting same and see no requirement that only a permanent physical injury can trigger a compensable psychological condition. In the context of workers' compensation, an "injury" is:

> any work-related traumatic event or series of traumatic events, including cumulative trauma, arising out of and in the course of employment which is the proximate cause producing a harmful change in the human organism evidenced by objective medical findings. "Injury" does not include the effects of the natural aging process, and does not include any communicable disease unless the risk of contracting the disease is increased by the nature of the employment. "Injury" when used generally, unless the context indicates otherwise, shall include an occupational disease and damage to a prosthetic appliance, but shall not include a psychological, psychiatric, or stress-related change in the human organism, unless it is a direct result of a physical injury.

KRS 342.0011(1). Under this definition, so long as a psychological change is a direct result of a physical injury it is compensable. Permanency of the physical injury is not required. *See Lexington–Fayette Urban County Government v. West,* 52 S.W.3d 564, 567 (Ky.2001) wherein a police officer was assaulted by a knife-wielding suspect in 1989. While the officer's physical injuries were limited to temporary "scratches, abrasions, and soreness," in 1997 she was diagnosed with work-related PTSD. Compensation for the officer's psy-

chological condition was not foreclosed just because her scratches and abrasions had healed and her soreness had abated. The same can be said of Smith's condition. Her low back injury was deemed temporary, but her PTSD was deemed permanent and both resulted from the October 19, 2005, explosion. Because the PTSD directly resulted from a physically traumatic event (the explosion), Smith sustained an "injury" under KRS 342.0011(1). *See Kubajak v. Lexington–Fayette Urban County Government,* 180 S.W.3d 454, 459 (Ky.2005) (compensation denied for failure to show PTSD was direct result of physical injury).

Citing *Newman v. John Deere Ottumwa Works of Deere & Co.,* 372 N.W.2d 199 (Iowa, 1985), Wal–Mart argues, "Kentucky has joined the majority view that causation cannot be established as a matter of law on the basis of individual subjective misperception of their work ability." Wal–Mart goes on to say, "the Iowa Supreme Court emphatically ruled [in *Newman* ] that an employee's belief, no matter how sincere, of work place stress, is inadequate as a matter of law to show causality between a mental condition and employment, if it does not correspond with provable objective facts." It occurs to us that if Kentucky has adopted this view, as Wal–Mart says we have, there should be Kentucky authority on point and Wal–Mart would have cited it to us. Wal–Mart even says this view was the "underlying rationale for the amendment to KRS 342.0011(1) in 1994." Our review of the historical and statutory notes to KRS 342.0011 has not unearthed support for Wal–Mart's statements. Therefore we see no reason to ignore Smith's statements about the pain she experiences daily.

■ The ALJ found Smith had a fifteen percent permanent partial impairment due to PTSD as diagnosed by Drs. Allen and

Ruth, both of whom attributed her psychological condition to the explosion at Wal–Mart. Dr. Allen believed Smith was physically capable of returning to work as a door greeter at Wal–Mart, but found her psychological condition prevented her from returning to work without being in significant distress. He also stated she would require frequent breaks and on-site counseling if she resumed working. Based upon the medical opinion of Drs. Allen and Ruth, we have no reason to disturb the ALJ's award of income benefits for PTSD.

For the foregoing reasons, the opinion of the Board is affirmed.

ALL CONCUR.