RENDERED: AUGUST 21, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-001760-WC

GARY SOWDER                                                APPELLANT

|     | PETITION FOR REVIEW OF A DECISION |
| --- | --- |
| v.  | OF THE WORKERS' COMPENSATION BOARD |
|     | ACTION NO. WC-06-89465 |

CBS CORPORATION; NORTON
LEATHERMAN SPINE CENTER;
HONORABLE JANE RICE WILLIAMS,
ADMINISTRATIVE LAW JUDGE; AND
WORKERS' COMPENSATION BOARD                    APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: JONES, MAZE, AND L. THOMPSON, JUDGES.

MAZE, JUDGE: The single issue for our review is whether a medical opinion

stating that a 2006 work injury "could have contributed" to the early development

of degenerative disc disease constituted substantial evidence to support a finding

that a 2019 surgery was causally connected to the prior work injury. In vacating the decision of the Administrative Law Judge (ALJ), the Workers' Compensation Board concluded that the expert's use of the word "could" did not constitute an opinion as to causation within reasonable medical certainty and remanded the claim to the ALJ for re-examination of the medical evidence as to causation. Finding no error in the opinion of the Board, we affirm.

Gary Sowder sustained a work-related back injury in 2006 for which he received a lump-sum settlement which included amounts for waiving his right to reopen and the right to vocational rehabilitation payments. Sowder did not, however, waive his right to past and future medical benefits. This appeal stems from a dispute which arose when the employer, CBS, moved to reopen the proceeding to contest the reasonableness, necessity, and work-relatedness of a proposed 2019 fusion surgery at L4-5 and L5-S1. CBS also moved to join appellee Norton Leatherman Spine Center and Sowder's treating physician, Dr. Rolando Puno, as parties to the fee dispute proceeding. CBS supported its motion to reopen with the physician advisor report of Dr. Mukund Gundanna who opined that the records submitted for review would not support the conclusion that the proposed procedure was either reasonable or necessary.

After Sowder filed the records of Norton Leatherman and Dr. Puno, CBS submitted a lengthy medical records review report of Dr. Russell Travis who ultimately concluded:

> I see no indication for any treatment specifically related to the work accident of 2006. As I have noted above, Mr. Sowder's current complaints and the surgery by Dr. Puno have no relationship whatsoever to the distant injury of 4/18/2006.

Sowder then filed a letter from Dr. Puno to Sowder's counsel. Dr. Puno's letter forms the core of the issue presented for our review:

> I am writing this letter on behalf of Mr. Gary Sowder concerning the medical fee dispute/motion to reopen. As you well know, the above patient sustained a work-related injury on April 18, 2006. His injury included an L3 burst fracture for which he underwent surgical treatment that included an L3 vertebrectomy and spinal fusion from L2-L4. The patient did really well following the surgery and has achieved a solid fusion at L2-L4. In the course of time the patient started to develop adjacent level degeneration disc disease at the level of L4-5 and L5-S1 below his spinal fusion which did not respond to conservative treatment. He eventually underwent surgery that included anterior inter-body fusion of L4-5 and L5-S1 on January 25, 2019. Based on the history it appears that the surgery in 2006 was related to the work-related injury of April 18, 2006. The successful solid fusion achieved for the treatment of his burst fracture **could have contributed** to early development of degenerative disc disease L4-L5 and L5-S1 for which additional surgical intervention had to be performed.

(Emphasis added.)

In response to this letter, CBS filed a letter from Dr. Travis in which he reaffirmed the opinions he had previously expressed regarding the reasonableness and necessity of the 2019 surgery and offered the following opinions as to causation:

> The literature on adjacent segment degeneration has consistently shown that this is not related to an operative procedure but is simply the natural aging process. As I noted when I reviewed the x-rays on Mr. Sowder such as the MRI of 4/18/2006 there were already degenerative changes at L4-5 and L5-S1. The radiology report noted, "Degenerative changes at L4-5. Concentric disk bulge with facet degenerative changes causing moderate canal stenosis. L5-S1 concentric bugle and bilateral neural foraminal narrowing."
>
> On 4/18/2006 Mr. Sowder already had significant degenerative changes at L4-5 and L5-S1. I maintain the opinions I expressed on 3/29/2019.
>
> I will answer the questions posed:
>
> Q1: Does Dr. Travis agree with Dr. Puno's statement that the current fusion "could" be related to the original injury?
>
> A1: My answer remains no.
>
> Q2: Does Dr. Puno's statement constitute a conclusion within reasonable medical probability?
>
> A2: No. In my opinion, Dr. Puno's statement is not backed by evidence-based medical literature on the development of adjacent segment degeneration.

The ALJ thereafter entered an order identifying the contested issues as the reasonableness and necessity and/or work-relatedness of the surgery at L4-5 and L5-S-1; extending proof for ten days and setting a deadline for briefs; and stating that the parties waived a hearing. Sowder was not deposed prior to submission of the matter for resolution.

The ALJ ultimately entered an order finding the surgery compensable on the basis that the opinions of Drs. Travis and Gundanna were not as persuasive as the opinion of Dr. Puno. With respect to this finding, the ALJ specifically noted that an argument could be made that Dr. Puno's use of the words "could have contributed" was weak in addressing causation, but she nevertheless interpreted his opinion as indicating that the second surgery was causally related to the original injury. CBS thereafter filed a petition for reconsideration alleging that Dr. Puno had merely stated that the second surgery "could" be related to the original injury and that this statement was insufficient medical proof to support a finding of compensability. The ALJ denied the petition to reconsider citing Sowder's argument that "[e]ven a cursory review of [Dr. Puno's] letter stands for the proposition that the doctor felt the surgery was reasonable, necessary and related to the work injury . . . ."

In its appeal to the Board, CBS again challenged the quality of the evidence upon which the ALJ relied in ordering the surgery compensable. CBS

argued that Dr. Puno's statement addressed causation in terms of possibility, not probability, and as such comprised insufficient proof that the 2019 surgery was causally related to the work injury of 2006. The Board agreed and vacated the decision of the ALJ, remanding the matter for a determination of whether substantial evidence supported the finding that the 2019 surgery was causally related to the 2006 work injury. This appeal followed.[1]

In *Crawford & Company v. Wright*, 284 S.W.3d 136 (Ky. 2009), the Supreme Court reiterated the burden of proof applicable to medical fee disputes:

> The party responsible for paying post-award medical expenses has the burden of contesting a particular expense by filing a timely motion to reopen and proving it to be non-compensable.

*Id*. at 140 (citing *Mitee Enterprises v. Yates*, 865 S.W.2d 654 (Ky. 1993) (the burden of contesting a post-award medical expense in a timely manner and proving that it is non-compensable is on the employer). Further, the former Court of Appeals addressed the nature of proof required to meet that burden – if a finding is not substantiated by evidence of probative value, the finding and the award based upon that finding must be set aside and the cause remanded to the factfinder for a proper determination. *Lexington Cartage Co. v. Williams*, 407 S.W.2d 395, 396

---

[1] The holding in *Hampton v. Flav-O-Rich Dairies*, 489 S.W.3d 230, 234 (Ky. 2016), clarified that a Board opinion is final for purposes of review "if it divests a party of a vested right by setting aside an ALJ's award or by authorizing or requiring the entry of a different award on remand."

(Ky. 1966). Here, the employer CBS offered medical evidence to support its claim that the 2019 surgery was not causally related to Sowder's 2006 injury. Sowder countered this evidence with Dr. Puno's letter.

Sowder complains that the Board impermissibly substituted its view of the evidence for that of the ALJ. However, the true question before us is whether there was substantial evidence supporting the ALJ's finding that Dr. Puno's opinion was the most persuasive evidence as to causation. We concur in the Board's analysis that, standing alone, there was not.

Turning again to *Lexington Cartage*, our predecessor Court "recognized that expert medical witnesses often find it impossible to state a medical cause of a disability with absolute certainty." 407 S.W.2d at 396. However, the *Lexington Cartage* Court also confirmed that "'[t]he facts or hypothesis on which the professional witness testifies need not be conclusive. They are sufficient if in his opinion they indicate the cause within reasonable *probability.*'" *Id.* (emphasis added) (quoting *Grimes v. Goodlett & Adams*, 345 S.W.2d 47, 49 (Ky. 1961)).

The opinion of this Court in *Combs v. Stortz*, 276 S.W.3d 282 (Ky. App. 2009), is also persuasive. One of Combs' treating physicians testified as to his opinion that she "might possibly require neck and/or shoulder surgery." *Id.* at 296. The trial court excluded that testimony on the basis that it was too speculative

to be admitted in support of Combs' claim.  In affirming the decision of the trial

court, we set out the following analysis:

> In *Seaton v. Rosenberg*, 573 S.W.2d 333 (Ky. 1978), an issue arose as to the admissibility of physician testimony.  Ultimately, the Court decided to admit the testimony, finding it important to note, "[o]ne last caution, the expert expresses his opinion as a probability or certainty, not a possibility, 'could have,' or the like." *Id*. at 338.  Likewise, in the workers' compensation matter of *Young v. L.A. Davidson Inc*., 463 S.W.2d 924 (Ky. 1971), the Kentucky Supreme Court held that in a workers' compensation proceeding, "**medical-opinion evidence [must] be founded on probability and not on mere possibility or speculation** . . . ." *Id*. at 926.  In the instant matter, Dr. Grefer couched his opinion *not* in terms of probability or certainty, but indeed as *possibility*.

*Id*. (emphasis added).  Like the medical testimony in *Combs*, Dr. Puno's testimony

was couched in terms of *possibility*, rather than probability or certainty, and, thus,

cannot be construed to be substantial evidence sufficient to support the ALJ's

finding with respect to causation.  Further, contrary to Sowder's contention that the

Board usurped the factfinding function of the ALJ, the Board merely remanded the

case to the ALJ for reconsideration of the evidence in light of the caselaw

concerning the quality of medical opinions and other evidence of record which

might support the finding that the 2019 surgery was reasonable, necessary, and

causally connected to the 2006 injury.

Accordingly, because we discern no error in the decision of the

Workers' Compensation Board, we affirm its opinion in all respects.


ALL CONCUR.


BRIEF FOR APPELLANT:

Wayne C. Daub
Louisville, Kentucky

BRIEF FOR APPELLEE CBS
CORPORATION:

Stanley S. Dawson
Louisville, Kentucky