Ruth COMBS, Appellant,

v.

Katie STORTZ and State Farm Insurance Company, Appellees.

No. 2007–CA–001232–MR.

Court of Appeals of Kentucky.

Jan. 9, 2009.

Robert E. Blau, Cold Spring, KY, for appellant.

Susanne M. Cetrulo, Edgewood, KY, for appellee, Katie Stortz.

James M. West, Edgewood, KY, for State Farm Insurance Company.

Before CAPERTON, KELLER and WINE, Judges.

## OPINION

CAPERTON, Judge.

Ruth Combs (Combs) appeals from a verdict rendered by a jury of the Campbell County Circuit Court, the Honorable Fred A. Stine V presiding. Combs seeks to have the verdict vacated and the case remanded for a new trial solely on the issue of damages. Specifically, Combs asserts that the trial court erred in submitting a compound question to the jury on the "threshold issue," that the trial court erred in denying Combs a directed verdict on the issue of Appellee Katie Stortz's (Stortz) negligence, that the trial court erred in providing an apportionment instruction to the jury, that the trial court erred in failing to grant Alexandria Tire a directed verdict on the issue of liability, that the medical examination opinions allowed by the court exceeded the scope intended by law, and that the trial court erred on numerous evidentiary grounds. After a review of the record in this matter, we reverse and remand, in light of the compound question submitted to the jury on the threshold issue.

On May 31, 2003, Combs, who does not drive, had been picked up from work by her daughter, Tina Riley (Riley) in Riley's car. Combs was riding in the passenger seat and Riley's son was in the backseat of the car. The car was apparently stopped at a traffic light near Papa John's Pizza on U.S. 27 in Southgate, Kentucky. Combs testified that another car stopped directly behind Riley's car and, shortly thereafter, Combs heard the squealing of tires. Combs testified that as she turned to identify the source of the noise, a car driven by Stortz struck the car behind Riley, propelling it into Riley's car.

Stortz has stated that after seeing the stopped vehicles, she slammed on her brakes but because the pedal went straight to the floor, she was unable to stop before striking the vehicle ahead of her. Combs maintains that the resulting collision forced Riley's car through the red light and into the intersection. Riley's car, in which Combs was riding, was not damaged as a result of the collision. According to Combs, Stortz apologized at the scene of the accident and admitted that she was looking for Papa John's at the time because she planned to pick up a pizza.

Combs testified that following the accident, she immediately felt pain throughout her neck and shoulders. Combs denied any prior medical problems. An ambulance was called to the scene, and Combs was transported to St. Luke's Hospital Emergency Room. Combs testified that she received treatment from several doctors over a course of months, but her pain did not subside.

On May 27, 2005, Combs brought a negligence claim against Stortz, as well as a claim against State Farm Insurance for underinsured motorist (UIM) coverage. State Farm insured Riley's car at the time of the accident. Stortz's car was insured by Allstate. A third-party complaint was filed against Alexandria Tire Inc. by both State Farm and Stortz alleging that Alexandria Tire had failed to repair and maintain the brakes on Stortz's vehicle.

Previously, Stortz's mother purchased the vehicle, a 1995 Mazda, and had taken it

to Alexandria Tire for inspection and necessary repairs prior to allowing her daughter to drive the car. Stortz maintains that after examining the car, Alexandria Tire made recommendations for repairs which were followed by Stortz's mother just two days before this collision. Following the accident, Stortz's mother took the vehicle to Rob Moore (Moore), a mechanic of Moore's Garage, for inspection on the basis of her daughter's assertion that the brakes did not work properly. After examining the brake line, Moore found that it had a leak, which he believed could have been responsible for the situation Stortz had described. Combs ultimately settled with Alexandria Tire for $5,000 while Combs' motion for summary judgment was still pending before the trial court. Prior to being informed of the settlement, the trial court granted summary judgment to Alexandria Tire.[1]

The jury trial in this matter was conducted January 24–26, 2007. Stortz and Combs were both present at trial, but State Farm was excused by court order from either being present or identified at trial. Over Combs' objection, the trial court allowed Stortz to present arguments and assert liability against Alexandria Tire. The trial court also permitted an instruction to the jury on both liability and apportionment of liability to Alexandria Tire. The trial court denied Combs' motion for directed verdict with respect to the liability of both Stortz and Alexandria Tire.

After the trial was conducted, the jury found Stortz to be negligent, and thus liable, and found Alexandria Tire to have no liability. Despite the finding of liability, the jury did not award damages to Combs. After the verdict was rendered, Combs moved to alter, amend, or vacate the jury verdict and judgment pursuant to Kentucky Rules of Civil Procedure (CR) 59.05. That motion was denied on May 24, 2007, and this appeal followed.

■ As her first basis for appeal to this court, Combs asserts that the jury instructions provided by the trial court were improper and, therefore, constitute reversible error. Specifically, Combs takes issue with Question Number Three and Instruction Number Four when read in conjunction with Question Number Two. We will address these issues respectively. We review alleged errors in jury instructions *de novo* to determine whether the instructions were based upon the evidence and whether they properly and intelligibly state the law. *Reece v. Dixie Warehouse and Cartage Co.*, 188 S.W.3d 440, 449 (Ky. App.2006).

■ We turn first to Question Number Three. That question reads as follows:

Do you find from the evidence that the Plaintiff, Ruth Combs, has incurred more than $1,000.00 in medical expenses related to reasonably necessary medical care for this accident, or has sustained a permanent injury as a direct result of this accident?

Combs asserts that this was a compound question linking two threshold issues together and was thus in error because it resulted in confusion as to the basis upon which the jury denied Combs recovery for her injuries.

---

1. After reviewing the record, it appears that the parties informed the court of this settlement on September 15, 2006. The order granting summary judgment to Alexandria Tire was nevertheless entered on October 3, 2006. However, for purposes of this appeal, we view Alexandria Tire as a settling party, and not as a party which was granted summary judgment.

In addressing this issue, we refer to Kentucky Revised Statutes (KRS) 304.39–060(2)(b), which provides:

> In any action of tort brought against the owner, registrant, operator or occupant of a motor vehicle with respect to which security has been provided as required in this subtitle, or against any person or organization legally responsible for his acts or omissions, a plaintiff may recover damages in tort for pain, suffering, mental anguish and inconvenience because of bodily injury, sickness or disease arising out of the ownership, maintenance, operation or use of such motor vehicle only in the event that the benefits which are payable for such injury as "medical expense" or which would be payable but for any exclusion or deductible authorized by this subtitle exceed one thousand dollars ($1,000), or the injury or disease consists in whole or in part of permanent disfigurement, a fracture to a bone, a compound, comminuted, displaced or compressed fracture, loss of a body member, permanent injury within reasonable medical probability, permanent loss of bodily function or death.

■ Thus, an injured party is entitled to proceed under two theories: monetary damages for reasonably necessary medical expenses exceeding $1,000 and specifically enumerated physical or permanent injuries, loss, or death. This Court in *Thompson v. Piasta*, 662 S.W.2d 223, 227 (Ky. App.1983), recognized that there are two distinct no-fault threshold questions which under the appropriate fact situations should be addressed by the jury. Only if a jury answers that at least one of the criteria has been met should it be instructed to determine the appropriate compensatory damages. However, should the jury find that neither threshold has been met, then it should be instructed to cease further deliberations.

■ Here, the compound verdict form, objected to by the appellant, does not provide for an appropriate verdict as to either threshold question. The reasonable necessity of the medical expenses, as well as the permanency of Combs' injuries, were both challenged and defended during the trial. "An error in a court's instructions must appear to have been prejudicial to the appellant's substantial rights or to have affected the merits of the case or to have misled the jury or to have brought about an unjust verdict in order to constitute sufficient ground for reversal of the judgment." *Miller v. Miller*, 296 S.W.2d 684, 687–88 (Ky.1956), quoting *Maupin v. Baker*, 302 Ky. 411, 194 S.W.2d 991, 993 (1946). Had the jury believed that a negative response to either threshold question would be sufficient to find for the appellees, they would have been misled by this instruction.

In light of the statutory and case law set forth above, and for the reasons set forth in the preceding analysis, we reverse and remand this case to the Campbell Circuit Court for a new trial on the issues of damages.

We now turn to Combs' appeal concerning Question Two and Instruction Four. According to Combs, Question Two and Instruction Four were error, as they called upon the jury to determine the fault of Alexandria Tire. Combs presents two arguments concerning alleged error. As to both, we disagree.

First, Combs asserts that there was no credible evidence presented to prove any negligence or causal connection between the actions of Alexandria Tire and the accident. Combs argues that a directed verdict should have been granted against Stortz, in that no disputed issues of fact exist upon which reasonable minds could differ and, thus, Question Two and In-

struction Four should not have been given to the jury. Combs also argues that Stortz was negligent per se in causing this accident and, therefore, a directed verdict against Stortz was proper. Further, Combs moved the trial court for a directed verdict determining that Alexandria Tire bore no liability in this matter.

In making her argument regarding the directed verdict which she sought on the issue of Stortz's liability, Combs cites to *Banner Transfer Co. v. Morse,* 274 S.W.2d 380 (Ky.1955), which she states stands for the proposition that reasonable minds cannot differ when an automobile driver strikes the rear of a stopped car in broad daylight. We decline to apply *Morse* so broadly. Indeed, we note that the *Morse* court restricted its ruling to the specific facts of that case, and did not seek to create a bright-line rule as to when a party is or is not negligent per se in causing an accident.

Furthermore, we note that a directed verdict is improper unless there is a complete absence of proof on a material issue, or if no disputed issue of fact exists upon which reasonable minds could differ. *Hilsmeier v. Chapman,* 192 S.W.3d 340, 345 (Ky.2006), citing *Bierman v. Klapheke,* 967 S.W.2d 16 (Ky.1998). A reviewing court may not disturb a trial court's decision on a motion for directed verdict unless that decision is clearly erroneous. *Id.* at 18.

In determining whether or not a directed verdict was proper, the trial court was bound to favor the party against whom the motion was made with all inferences which may reasonably be drawn from the evidence. Indeed, its sole duty was to determine whether the evidence favorable to the party against whom the motion was made is of such substance that a verdict rendered thereon would be palpably or flagrantly against the evidence, and

of such a nature to indicate that a decision was reached as a result of passion or prejudice. *NCAA v. Hornung,* 754 S.W.2d 855 (Ky.1988). Clearly, in the matter *sub judice,* the trial court did not find this to be the case. We decline to disturb that finding on appeal.

Second, Combs argues that Alexandria Tire should not have been included in the apportionment instruction and that a directed verdict should have been entered finding that Alexandria Tire bore no liability in this matter. Combs relies on *Owens Corning Fiberglas v. Parrish,* 58 S.W.3d 467 (Ky.2001), in support of these assertions, and argues that the mere fact that a party has sued and settled does not allow the fact-finder to allocate part of the total fault to the settling party. Combs asserts that apportionment can only be determined for damages for which the party is actually at fault, and for which the same party has settled, which she argues is not the case in the matter *sub judice.*

In reviewing this issue we note that the posture of the case below, at least insofar as Alexandria Tire was concerned, was somewhat anomalous. As previously noted, after Stortz brought Alexandria Tire into the case as a third party, Alexandria Tire moved for summary judgment, but settled with Combs before an order was entered on that motion. The parties then advised the court that in light of the settlement, the summary judgment issue was moot. An order was nevertheless entered, granting summary judgment to Alexandria Tire only a few weeks later.

As we have stated, in light of the odd posture of the case below, we do not view Alexandria Tire as a party which was granted summary judgment for purposes of this appeal. Certainly, at such time as the parties appeared jointly before the trial court to advise of settlement, their liti-

gious fervor with respect to the issue of summary judgment dissipated. Indeed, as the order of summary judgment made clear, no further pleadings were filed on that issue after the parties appeared before the court at the aforementioned conference. Accordingly, we cannot find that the order granting summary judgment was reliable, insofar as it could not have been based on the complete and thoroughly argued positions of the parties, as all parties abandoned their arguments in that respect upon reaching settlement.

■ We do not consider Alexandria Tire as a party that was granted summary judgment for purposes of this appeal, but instead view it as a settling party. Our thorough review of the record indicates that it was the clear and unequivocal intent of the parties to settle. While settlement certainly does not constitute an admission of fault, neither does it negate the possibility of fault. In light of the evidence presented throughout trial, we do not find the court's decision to deny the motion for directed verdict to be clearly erroneous, and we decline to disturb that finding upon appeal.

■ Having found that the trial court did not act erroneously in denying the directed verdict on the issue of Alexandria Tire's liability, we likewise decline to find that the apportionment instruction was improper. Our review of *Parrish* indicates that a dismissed party or a settling nonparty cannot be included in the apportionment instruction *unless* the instruction affords opportunity for a specific finding of fault. In the matter *sub judice,* Instruction Four clearly and specifically asked the jury to determine fault with respect to Alexandria Tire, a party which had settled. This question was in accord with *Parrish.*

The law is clear that an apportionment instruction must be given in tort actions involving the fault of more than one party, including parties that have settled, if requested. *Stratton v. Parker,* 793 S.W.2d 817 (Ky.1990). Accordingly, the trial court's giving Question Two and Instruction Four to the jury was not error.

The foregoing aside, we note that even if the court had committed error by providing the apportionment instruction, any such error was harmless as it was cured by the verdict in this matter. *Davis v. Lucas,* 432 S.W.2d 411 (Ky.1968). The jury did not find for either defendant in this matter and clearly decided the issue of liability in Combs' favor by finding Stortz solely at fault. Thus, Combs was not prejudiced by the apportionment instruction, even if same had been erroneously submitted.

■ As her second basis for appeal, Combs argues that the trial court committed reversible error by excluding any reference to the named defendant, State Farm. State Farm was joined as a defendant in this matter as the provider of UIM coverage for Tina Riley's car.[2] Thereafter, on August 26, 2006, State Farm filed a motion in limine, seeking an order prohibiting State Farm from being named or identified as a party during trial. The merits of that motion were argued before the court, and on October 12, 2006, the motion was sustained. Accordingly, State Farm was not identified as a party at trial. Combs now argues that this was error.

The standard of review is harmless error when considering whether the admission or exclusion of evidence at trial is reversible error. CR 61.01. Thus, we will reverse or modify a judgment only when the error prejudices the substantial rights

2. Again, Tina Riley was Combs' daughter and her car was the car in which Combs was a passenger when the accident at issue occurred.

of the complaining party. *Davidson v. Moore*, 340 S.W.2d 227 (Ky.1960). We review this issue with those standards in mind.

In making this argument, Combs relies upon the decisions of *Earle v. Cobb*, 156 S.W.3d 257 (Ky.2005), and *Stinson v. Mattingly*, 2007 WL 625225 (Ky.App.2007). We note first that *Stinson* is an unpublished opinion which is not yet final. Combs correctly notes that pursuant to CR 76.28(4)(c), unpublished appellate opinions rendered after January 1, 2003, may be cited for consideration by the Court if no published opinion exists which adequately speaks to the issue at hand.

Nevertheless, a review of the current status of the *Stinson* case reveals that as of January 2008, the decision remains under discretionary review by the Kentucky Supreme Court. As the case is not final, we decline to rely upon it as authority, as this would be in contradiction of CR 76.28(4)(c). *Kohler v. Commonwealth of Ky. Transportation Cabinet*, 944 S.W.2d 146 (Ky.App.1997), and *Kentucky National Insurance Company v. Shaffer*, 155 S.W.3d 738 (Ky.App.2005).

We therefore turn to an analysis of *Earle* as it applies to the matter *sub judice*. *Earle*, like the instant matter, involved an automobile accident, after which the Plaintiff named both the negligent driver and the UIM carrier as party defendants. However, *Earle* makes a critical departure from the matter *sub judice* insofar as the UIM carrier in that matter elected to exercise the procedure outlined in *Coots v. Allstate Insurance Company*, 853 S.W.2d 895 (Ky.1993) (the *Coots* procedure) and codified at KRS 304.39–060, by substituting its payment for that of the liability carrier.

The *Coots* procedure essentially provides that when settlement with the liability carrier occurs, and when such settlement reaches the policy limits of the liability carrier, the UIM carrier may elect to substitute its money for that of the liability carrier. In so doing, the UIM carrier retains a subrogation right against the tortfeasor.

In *Earle*, the Court clearly and specifically identified the issue before it as "[w]hether an underinsured motorist (UIM) carrier must be identified at trial *when it chooses to preserve its subrogation rights by means of the procedures set forth in Coots v. Allstate Insurance Company* (the *'Coots* procedure')." *Earle*, 156 S.W.3d at 258. (Emphasis added). After so identifying the issue, the *Earle* Court held, "We conclude that the UIM carrier should be so identified as a party ... *because it chose to retain its subrogation rights by substitution of its payment for that of the liability insurance carrier.*" *Id.* (Emphasis added).

Upon review, we decline to expand *Earle* beyond the parameters clearly indicated in the decision. The exercise of the *Coots* procedure is a clear point of departure between *Earle* and the matter *sub judice*. We believe that this departure precludes the application of the *Earle* decision to the instant matter. In ruling as it did, the *Earle* Court noted that when a UIM carrier utilizes the *Coots* procedure, it releases the tortfeasor from liability to the plaintiff, leaving itself as the only party with potential liability. In so doing, the UIM carrier becomes a real party in interest, substituting its liability for that of the defendant.

In the instant case, it is undisputed that the liability carrier, Allstate, entered into a settlement agreement with Combs for less than the amount of its policy limits. It is also undisputed that State Farm not only declined to exercise the *Coots* procedure, but was in fact unable to do so as the

liability carrier had not offered its policy limits. Further, a review of the record indicates that State Farm's attorney was not present and did not participate at trial. Accordingly, because we do not find that *Earle* applies to the matter *sub judice*, and because we decline to rely on the nonfinal *Stinson* decision, we uphold the trial court's decision to exclude reference to State Farm. We find no reversible error.

As her third basis for appeal, Combs argues that the trial court erred in allowing the testimony of defense expert Dr. Steven Wunder and asserts that his testimony exceeded the scope allowed by law.

Pursuant to CR 61.01, the standard of review for inclusion or exclusion of evidence at trial is that of harmless error. We therefore review the following evidentiary issues to determine if the inclusion or exclusion of the evidence or testimony at issue prejudiced the substantial rights of Combs. *Davidson v. Moore*, 340 S.W.2d 227 (Ky.1960). A trial court's ruling on the admission of expert testimony is reviewed under the same abuse of discretion standard as a trial court's ruling on any other evidentiary matter. *Goodyear Tire and Rubber Company v. Thompson*, 11 S.W.3d 575 (Ky.2000).

We turn first to Combs' arguments respecting the testimony of Dr. Steven Wunder. Because Combs put her physical condition at issue in this matter, Stortz was entitled to have Combs examined by a physician of her choosing. *Sexton v. Bates*, 41 S.W.3d 452 (Ky.App.2001), *Taylor v. Morris*, 62 S.W.3d 377 (Ky.2001). As Combs correctly notes, the purpose of CR 35.01 is for a physician to perform an examination concerning a person's physical condition. At issue, then, is what constitutes the appropriate components of such an examination.

Combs questions numerous aspects of Dr. Wunder's report and testimony.

Among them, Combs takes issue with Dr. Wunder's review of the photographs of the cars involved in the accident and his accompanying opinion that, based on the damage to the car, Combs could not have received the injuries she claims. She also asserts that Dr. Wunder made critical comments towards Combs and her physician and questioned her integrity and honesty with respect to the injury she asserts in relation to the accident that is the subject of this claim.

We note at the outset that Combs includes no citation to the record regarding her assertions. Absent specific citations as required by CR 76.12(4)(c)(v), we are required to assume that the evidence supported the findings of the lower court. We are thus confined in review to a determination as to whether the pleadings below supported the judgment on all issues of fact in dispute. *Porter v. Harper*, 477 S.W.2d 778 (Ky.1972).

In addressing this issue, we note that CR 35.01 exists solely to establish the right of the parties to obtain an independent medical exam when the physical condition of a party is at issue. It is Kentucky Rule of Evidence (KRE) 702 and KRE 703 which effectively define the scope of allowable testimony and determine the acceptable foundation for same.

Clearly, KRE 703 allows for the expert's reliance on facts or data, including hearsay, which would otherwise not be admissible into evidence, provided that it is of a type reasonably relied upon by experts in that field. KRE 703, *Alexander v. Swearer*, 642 S.W.2d 896 (Ky. 1982). Thus, we find that Dr. Wunder was not required to make a specific citation for every opinion that he provided, in light of his training and experience as a medical

expert on the subject matter to which he testified.

 It seems that the crux of Combs' argument is that Dr. Wunder should have determined only Combs' instant and current medical condition. Indeed, Combs seems to assert that Dr. Wunder should have provided no critique of her past care and should have relied upon no material other than that derived solely from his physical examination. We disagree. It seems clear that in rendering an opinion on a patient's current condition, a physician would likely need to take into account the mechanism of injury, the patient's medical history, and the available medical records, in addition to examining the patient's physical condition at the time of evaluation.

The qualification of a witness as an expert rests within the sound discretion of the trial court. KRE 702. Indeed, there are numerous reported cases where a physician has been held qualified to express an opinion on medical matters outside his areas of expertise. *Owensboro Mercy Health System v. Payne*, 24 S.W.3d 675 (Ky.App. 2000).

In *Stringer v. Commonwealth*, 956 S.W.2d 883 (Ky.1997), our Supreme Court held that expert opinion evidence is admissible so long as: (1) the witness is qualified to render an opinion on the subject matter; (2) the subject matter is proper for expert testimony and satisfies the requirements of *Daubert v. Merrell Dow Pharmaceuticals, Inc.* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); (3) the subject matter satisfies the test of relevancy, subject to the balancing of probativeness against prejudice as required by KRE 403; and (4) the opinion will assist the trier of fact pursuant to KRE 702. *Stringer*, 956 S.W.2d at 891.

 Although physicians are qualified to testify as experts with respect to their particular area of specialty, we note that generally it is improper for a physician to testify as to the biomechanics of an accident. In *Tetrick v. Frashure*, 119 S.W.3d 89 (Ky.App.2003), this Court held, in discussing the qualifications of a witness concerning a seat belt defense, that the witness must possess sufficient training, special knowledge, or skill to testify on the subject.

 In this instance, however, after thoroughly reviewing Dr. Wunder's deposition testimony and report, we are not convinced that the doctor's testimony was outside of his area of expertise, nor that it failed to meet the standards outlined above. Certainly, a variety of factors must be taken into consideration in rendering a thorough and well-informed opinion, and our review of the record reveals no error in the materials relied upon by Dr. Wunder in offering his opinion.

After reviewing the record, we find no indication that Dr. Wunder testified as to the biomechanics of the accident itself. To the contrary, it appears that Dr. Wunder took a thorough personal history from Combs and conducted his examination with that history in mind. Further, we find no evidence that the doctor based his opinion, even slightly, on his brief review of the photographs of the collision. Our review of the records indicates that Dr. Wunder did review photographs of the accident, but nowhere do we find evidence that he based his opinion upon the state of the car as it appeared in those pictures.

 We also find no merit in Combs' assertions that Dr. Wunder accused Combs of lying, or that he accused her treating physicians of being "frauds." Neither party cites to, nor does our review of the record reveal, any portion of the deposition in which this testimony oc-

curred. We note that Dr. Wunder is entitled to provide his opinion as to the nature of Combs' injury, if any, when asked to do so. Mere disagreement with Combs on this matter does not equate to making disparaging allegations, and we decline to so find. Because we find no portion of the record which contains the testimony alleged by Combs, we decline to address this issue further. *See* CR 76.12(4)(c)(v), and *Porter*, 477 S.W.2d at 779.

Having cited to the above case law, however, we do note that it is well within the discretion of the trial court to admit and exclude expert testimony and to decide the qualifications of expert witnesses. Such rulings are seldom disturbed on appeal. *Lee v. Butler*, 605 S.W.2d 20 (Ky.App. 1979). In this particular case, our review of the record has revealed no manifest error in the admission of Dr. Wunder's testimony, and as such, we decline to reverse.

▬ Combs also asserts that the trial court erred by allowing information pertaining to Combs' prior workers' compensation claims and insurance payments. It is clear that KRE 803(6), (8), and (10) provide hearsay exceptions for records which are maintained by businesses and public agencies. Those rules require that minimal foundation be laid for the introduction of such records when self-authenticated under KRE 902. As the rules are inclusive in nature, evidence shall be admitted unless its probative value is substantially outweighed by a prejudicial effect.

▬ Combs argues for the exclusion of information pertaining to past workers' compensation claims, insurance payments, and any other collateral source. Having thoroughly reviewed the record, we are uncertain as to exactly which collateral-source violation Combs asserts. The "collateral-source rule" provides that if an injured party received some compensation for injuries from a source wholly independent of the tortfeasor, such payment should not be deducted from the damages which the plaintiff would otherwise collect from the tortfeasor. That does not appear to be the situation *sub judice*.

Regardless, Stortz asserts that evidence pertaining to Combs' prior workers' compensation claims, insurance payments, and employment records was relevant, as Combs repeatedly denied both in her sworn testimony, and to her treating physicians, that she had ever injured herself at any job prior to this accident. Stortz asserts that introduction of these records, confirming the existence of these past injuries and the treatment received as a result thereof, was therefore necessary for impeachment purposes, to demonstrate inconsistency in a matter in which Combs' credibility was a critical issue for the jury to consider.

Having reviewed this matter in detail, we agree. It is well-established that records which might not otherwise be admissible in isolation are admissible to impeach credibility in a civil case. In light of Combs' denial of the information contained in these certified, self-authenticating records, we find that their submission was appropriate here for that reason. Therefore, having reviewed the records, and the reasons behind their submission, we decline to find that they were more prejudicial than probative, and we uphold the decision of the trial court regarding their admission.

▬ Combs also argues that portions of Dr. Grefer's testimony were improperly excluded by the trial court. Again, we review this issue under a harmless error standard, to determine if the exclusion of Dr. Grefer's testimony resulted in substantial prejudice to Combs.

Dr. Grefer, who was one of Combs' treating physicians, testified as to his opinion that Combs *might possibly require* neck and/or shoulder surgery. He also provided an estimation of the costs of those operations. That testimony was ultimately excluded by the trial court as being speculative. Combs argues that Dr. Grefer's testimony should have been allowed in its entirety. We disagree.

In *Seaton v. Rosenberg,* 573 S.W.2d 333 (Ky.1978), an issue arose as to the admissibility of physician testimony. Ultimately, the Court decided to admit the testimony, finding it important to note, "[o]ne last caution, the expert expresses his opinion as a probability or certainty, not a possibility, 'could have,' or the like." *Id.* at 338. Likewise, in the workers' compensation matter of *Young v. L.A. Davidson Inc.,* 463 S.W.2d 924 (Ky.1971), the Kentucky Supreme Court held that in a workers' compensation proceeding, "medical-opinion evidence [must] be founded on probability and not on mere possibility or speculation...." *Id.* at 926. In the instant matter, Dr. Grefer couched his opinion *not* in terms of probability or certainty, but indeed as *possibility.*

While we are not compelled to follow the decisions of courts in other circuits, we believe in this instance that the reasoning in *Schulz v. Celotex Corp.,* 942 F.2d 204 (3rd Cir.1991), is sound and serves to further expound upon what we believe is the reasoning behind the aforementioned decisions. That case reads, in pertinent part:

> Situations in which the failure to qualify the opinion have resulted in exclusion are typically those in which the expert testimony is speculative, using such language as "possibility."
>
> ....
>
> Accordingly, while the particular phrase used should not be dispositive, it may indicate the level of confidence the ex-

pert has in the expressed opinion. Perhaps nothing is absolutely certain in the field of medicine, but the intent of the law is that if a physician cannot form an opinion with sufficient certainty so as to make a medical judgment, neither can a jury use that information to reach a decision. *McMahon v. Young,* 442 Pa. 484, 276 A.2d 534, 535 (1971).

*Schulz,* 942 F.2d at 208–209. We believe this reasoning rings true for the matter *sub judice.* Dr. Grefer's testimony was couched in terms of possibility, in contrast to probability or certainty. We decline to overrule the trial court in finding his testimony inadmissible.

Additionally, we note that both the pretrial Order of the Court in this matter and our Kentucky Rules of Civil Procedure require that anticipated medical testimony of this nature be produced prior to the deadlines imposed by the court, and prior to the completion of the defendant's medical proof to which it pertains. Our review of the record indicates that Combs failed to provide these disclosures in advance of the deposition of Dr. Wunder, thereby causing Stortz to forego the opportunity she would otherwise have had for Dr. Wunder to review the recommendations of Dr. Grefer and comment upon same.

Because we believe that Dr. Grefer's opinion can accurately be classified as speculative and because the court-ordered CR 26 disclosures were not timely produced, we uphold and affirm the trial court's decision disallowing the testimony of Dr. Grefer.

We are also asked to address whether or not Stortz's counsel improperly cross-examined Combs with questions that were irrelevant, highly prejudicial, or without a good faith basis.

In reviewing Combs' arguments in this regard, it appears that she objects to ques-

tions pertaining to past workers' compensation claims, past treatment, and injury claims with past employers without providing correlating records. Despite voicing this objection, our review of the brief submitted by Combs does not include any specific reference to the record to illustrate her point. *See* CR 76.12(4)(c)(v).

■ As has already been established, Combs placed her medical condition at issue by filing the lawsuit. In doing so, she subjects herself to detailed questioning by opposing counsel regarding her physical condition. Understandably, in light of Combs' denials of prior medical conditions, questions regarding records which indicate same are appropriately admitted as impeachment evidence. For reasons already addressed herein, we decline to reverse the trial court's decision on this basis.

■ We do note that in addition to objecting to questions pertaining to her past medical history, Combs also objects to Stortz's cross-examination with respect to Combs' nephew's former employment at Combs' counsel's law firm. In response, Stortz cites to a number of cases, including *Miller ex rel Monticello Baking Co. v. Marymount Medical Center*, 125 S.W.3d 274 (Ky.2004), in arguing that cross-examination as to motive and bias are proper.

■ We agree that, generally, cross-examination with respect to the potential motive and bias of a party is proper and within the scope of our rules of evidence. However, Combs does correctly argue that even in certain instances where evidence may be relevant, pursuant to KRE 403, evidence may be excluded if highly prejudicial. We agree. In the case *sub judice*, we are convinced that the cross-examination objected to by Combs was in fact admitted in error, although harmless in light of the verdict ultimately rendered by the jury.

■ It is the job of the trial court to weigh the proffered evidence and make a ruling on whether that evidence should be excluded as unfairly prejudicial pursuant to KRE 403. In so deciding, a trial court must consider three factors: the probative worth of the evidence, the probability that the evidence will cause undue prejudice, and whether the harmful effects substantially outweigh the probative worth. *Barnett v. Commonwealth*, 979 S.W.2d 98 (Ky. 1998).

Having reviewed the testimony at issue, we disagree with the trial court's admission of this evidence. While cross-examination as to motive and bias are generally proper, in the case *sub judice*, we do not believe that the mere fact that Comb's nephew was previously employed by counsel's law firm in and of itself implies motive or bias, and we decline to impute such motive or bias to counsel absent other evidence to that effect. We therefore believe the admission of such testimony to be in excess of the trial court's discretion. Nevertheless, as the jury ultimately found Stortz liable, we believe that this error ultimately did not result in any harm to Combs, and we therefore decline to reverse on that basis.

■ Finally, Combs argues that the trial court should either have directed a verdict or excluded the testimony proffered by Stortz's expert, Rob Moore, of Moore's Garage. Moore was called to testify with respect to the alleged brake failure and his inspection of Stortz's vehicle after the accident. During his testimony, Moore stated that based upon his experience there was no reason for a prior mechanic to have loosened any of the brake line parts while performing work on the car prior to the accident. Additionally, he testified that the leak of the brake fluid very likely could have been caused by the

collision and was not a preexisting problem prior to the accident.

Combs now asserts that Moore should not have been allowed to testify to the foregoing, as it provided no assistance to the jury's understanding of how the accident occurred. Accordingly, Combs argues, Moore's testimony was prejudicial and tainted the jury. Of note, Combs does not argue that Moore was unqualified to testify as an expert witness, nor that the scope of his testimony was beyond the scope of his expertise. Furthermore, it is important to note that no *Daubert* hearing was requested by Combs with regard to Moore's testimony at trial.

Upon review of this issue, we cannot find any evidence to suggest that the trial court was in error in its decision to allow Moore's testimony. Upon appeal, we cannot find that Moore's testimony did not assist the jury in understanding how the accident occurred. Furthermore, it is clearly within the province of the trial court to weigh the testimony and to determine whether any prejudice that might have occurred would be outweighed by the probativeness of the testimony. As there was no argument as to Moore's expertise with respect to the inspection of cars, we find that his testimony regarding the alleged brake failure was properly within the purview of an expert opinion pursuant to KRE 702.

Whether it had been necessary to loosen the brake parts of Stortz's car prior to the accident and whether or not the leaking brake fluid could have been caused by the accident are both important and relevant to the issue at hand. Thus, Moore's expert opinion was properly admitted at trial.

In light of the foregoing review of the issues raised by Combs on appeal, we hereby reverse and remand to the trial court for further proceedings consistent with this opinion.

ALL CONCUR.