RENDERED: FEBRUARY 25, 2022, 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0605-WC

PERRY COUNTY BOARD OF
EDUCATION                                                                                    APPELLANT


v.                    PETITION FOR REVIEW OF A DECISION
                      OF THE WORKERS' COMPENSATION BOARD
                            ACTION NO. WC-18-86442


MARK CAMPBELL; HONORABLE
GRANT ROARK, ADMINISTRATIVE
LAW JUDGE; HAZARD ARH; DR.
MUKUT SHARMA; AND WORKERS'
COMPENSATION BOARD                                                          APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CALDWELL, CETRULO, AND JONES, JUDGES.

CALDWELL, JUDGE:  Perry County Board of Education ("Employer") appeals

from a Workers' Compensation Board ("WCB") opinion affirming the order of an

Administrative Law Judge ("ALJ") resolving a medical fee dispute about Mark

Campbell's ("Campbell") total knee replacement surgery in Campbell's favor. We affirm.

## FACTUAL AND PROCEDURAL HISTORY

On April 11, 2018, Campbell fell at work, causing knee and other injuries. Campbell had arthroscopic meniscal repair surgery on his right knee in November 2018 – which was performed by Dr. Darren Johnson in Lexington. But Campbell continued to complain of problems (such as pain and stiffness) with his right knee. He filed his application for resolution of injury claim form on or about November 25, 2019.

Shortly thereafter, Campbell filed a motion to bifurcate. Campbell stated that his treating doctor, Dr. Mukut Sharma (an orthopedic surgeon), said Campbell needed total knee replacement surgery because injections were not effectively improving Campbell's symptoms. Campbell further asserted that total knee replacement surgery was scheduled for December 4, 2019, and that Employer denied being responsible for paying for the total knee replacement surgery. He requested that the ALJ separately address whether the knee replacement surgery was compensable before ruling on other matters.

Campbell underwent the scheduled total knee replacement surgery on December 4, 2019. Meanwhile, Campbell's case was assigned to an ALJ. Employer filed a Form 112 asserting a medical fee dispute about the total knee

replacement surgery. Employer argued that the knee replacement surgery was not needed to correct any injury from the April 2018 work incident. Employer contended the total knee replacement surgery was for treatment of non-work-related osteoarthritis.

The ALJ granted Campbell's motion to bifurcate the proceeding in order to first address the compensability of the total knee replacement surgery. Employer submitted the opinions of three orthopedic surgeons,[1] each of whom opined that Campbell did not need knee replacement surgery for any injury suffered in the April 2018 work incident. Campbell submitted the treatment notes of Dr. Sharma, who performed his knee replacement surgery. Campbell also submitted a medical report from Dr. Jared Madden, an osteopathic doctor who examined Campbell shortly before the hearing on the medical fee dispute. Campbell also testified by deposition and during the hearing.

Following the parties' submission of briefs, the ALJ entered an interlocutory order resolving the medical fee dispute in Campbell's favor in August 2020. The ALJ denied the Employer's motion for reconsideration that September. Employer filed an appeal with the WCB.

---

[1] Employer filed two orthopedic surgeons' medical reports. Employer also attached to its medical fee dispute form the utilization review notice of denial containing another orthopedic surgeon's opinion. *See* 803 Kentucky Administrative Regulations ("KAR") 25:190 (utilization review and medical bill audit).

-3-

After the WCB dismissed Employer's initial appeal as from a non-final order and remanded to the ALJ for further proceedings, Employer and Campbell entered into a settlement regarding all aspects of Campbell's claim except for the medical fee dispute about the total knee replacement.

The Chief ALJ approved the settlement, noting that both parties wished to preserve the medical fee dispute about the total knee replacement and argue this issue to the WCB. Thus, upon the parties' agreement, the Chief ALJ stated in its order approving the settlement that the order would "further constitute a final and appealable ruling on the medical dispute." (Record ("R."), p. 428.)[2]

Employer again appealed to the WCB, which affirmed the ALJ's resolution of the medical fee dispute. Employer then petitioned this Court for review. Further facts will be set forth as necessary to resolve the issues presented in Employer's petition for review.

## STANDARD OF REVIEW

The Court of Appeals reviews WCB decisions to determine if the WCB "has overlooked or misconstrued controlling statutes or precedent, or committed an

_____

[2] We construe this order as essentially incorporating into a final and appealable order the ALJ's August 2020 interlocutory opinion and order resolving the medical fee dispute in Campbell's favor as well as the ALJ's September 2020 order denying Employer's motion for reconsideration.

-4-

error in assessing the evidence so flagrant as to cause gross injustice." *Western Baptist Hosp. v. Kelly*, 827 S.W.2d 685, 687-88 (Ky. 1992).

## ANALYSIS

### WCB Properly Upheld Factual Findings as Supported by Substantial Evidence Despite Harmless Misstatement About the Burden of Proof

Employer complains that the WCB improperly regarded it as having the burden to prove that the knee replacement surgery was not work related and was not reasonable or necessary. Employer contends that the WCB improperly shifted the burden of proof on this issue to it, citing and misapplying the case holding in *C & T of Hazard v. Stollings*, No. 2012-SC-000834-WC, 2013 WL 5777066 (Ky. Oct. 24, 2013). Employer correctly notes that the *Stollings* case involved a reopening rather than a medical fee dispute arising prior to the entry of an award. So, it argues that *Stollings* cannot apply here.

The WCB stated that Employer "had the burden of proof on all issues" regarding the medical fee dispute here based on a quotation from *Stollings* that: "[t]he burden is placed on the party moving to reopen because it is that party who is attempting to overturn a final award of workers' compensation . . . ." (WCB opinion entered April 30, 2011 – hereinafter "WCB Opinion," p. 11) (citing *Stollings*, 2013 WL 5777066, at *2). But the medical fee dispute here did not arise upon reopening but instead arose before any award was entered or any settlement was reached. And no reopening occurred in this case – instead, the parties asked

-5-

the WCB to review the ALJ's prior resolution of the medical fee dispute following approval of their settlement on all other aspects of the claim. So, the quotation from *Stollings* was not applicable to the non-reopening proceedings here.

Instead, the burden of proof on this medical fee dispute – which arose pre-award – fell upon the claimant under KRS[3] 342.735(3)[4] which provides in pertinent part:

> The administrative regulations shall permit an employee or other interested party, prior to the filing of a claim, to request a determination by an administrative law judge on medical issues relating to the reasonableness or appropriateness of the proposed medical care or relating to the obligation of the employer or the employer's insurance carrier to make payment of contested medical bills. However, **the employee has the burden of proof to show the medical expenses are related to the injury, reasonable and necessary prior to an application of**

---

[3] Kentucky Revised Statutes.

[4] KRS 342.735 was not cited in the petition for review nor in the response to the petition. The title of KRS 342.735 does not clearly indicate that it contains substantive provisions regarding the burden of proof in medical fee disputes, but at first glance appears to concern only authority for promulgating administrative regulations: "Additional authority for administrative regulations on expediting payment of temporary total disability benefits, use of managed care, and expediting payment for and resolution of disputes concerning medical benefits[.]" KRS 342.735. Nonetheless, KRS 342.735(3) puts the burden of proof on the claimant for pre-award medical fee dispute issues and apparently the WCB overlooked this statute – as did the parties based on their lack of citation to this statute in the petition and response.

To the extent that our opinion in *National Pizza Company v. Curry*, 802 S.W.2d 949, 951 (Ky. App. 1991), appears to state the burden of proof in a pre-award medical fee dispute differently from the current version of KRS 342.735(3), *Curry* has since been superseded by statute. The legislative history to KRS 342.735 indicates it was amended in 1994 to include the burden of proof provisions. *See* 1994 Kentucky Acts ch. 181 § 21, H.B. 928.

> **benefits being filed and before an award or order of benefits**. Thereafter, the burden is upon the employer.

(Emphasis added.)

Still, regardless of who bears the burden of proof, an ALJ's factual findings should not be disturbed if they are supported by substantial evidence. *See National Pizza Co.*, 802 S.W.2d at 951 ("Regardless of the burden of proof, the ALJ's findings are supported by substantial evidence and neither the board nor this court may substitute its opinion otherwise."). Employer even states on pages 12-13 of its petition for review: "Since the ALJ held that Campbell was successful, the question on appeal is whether there is substantial evidence of record to support a finding in his favor."

Despite its misstatement about the burden of proof in the medical fee dispute, the WCB recognized on pages 12-13 of its opinion that as long as the ALJ's factual findings were supported by substantial evidence, the WCB lacked authority to disturb such factual findings. And the WCB ultimately concluded: "Substantial evidence supports the ALJ's ultimate determination that the right total knee replacement surgery is compensable; consequently, a different result is not compelled." (WCB Opinion, p. 15.)

Having carefully examined the record and applicable law, we do not perceive that the WCB "committed an error in assessing the evidence so flagrant as to cause gross injustice." *See Kelly*, 827 S.W.2d at 688. And other than the

-7-

WCB's inapt but harmless citation to the burden of proof in a reopening case[5] and harmless lack of discussion of KRS 342.735(3), we do not perceive that the WCB overlooked or misconstrued controlling statutes or precedent in upholding the ALJ's resolution of this medical fee dispute. *See Kelly*, 827 S.W.2d at 687-88.

**Causal Relation Between Knee Replacement and April 2018 Work Incident**

Undisputedly, Employer came forward with evidence from three orthopedic surgeons. Each of these surgeons very specifically opined that there was no causal relation between the April 2018 work incident and the total knee replacement surgery.

The medical evidence submitted by Campbell, on the other hand, did not contain similarly specific, explicit opinions about a causal relationship between the April 2018 work incident and the December 2019 total knee replacement. However, precedent from our Supreme Court suggests that ALJs, the WCB, and courts should review medical reports not to see if particular words or phrases are used but for their overall content. *See Brown-Forman Corp. v. Upchurch*, 127 S.W.3d 615, 621 (Ky. 2004) (citation omitted) ("It is the quality and substance of a physician's testimony, not the use of particular 'magic words,'

---

[5] The WCB's misstatement of the burden of proof was harmless because the WCB nonetheless determined that the ALJ's findings of fact were supported by substantial evidence – the correct standard for reviewing the ALJ's findings of fact where the claimant had the burden of proof. *See generally McManus v. Kentucky Retirement Systems*, 124 S.W.3d 454, 459 (Ky. App. 2003); *Garmeada Coal Co. v. Mabe*, 310 Ky. 801, 804-05, 222 S.W.2d 829, 831 (1949).

that determines whether it rises to the level of reasonable medical probability, i.e., to the level necessary to prove a particular medical fact. Where there is conflicting medical testimony concerning the cause of a harmful change, it is for the ALJ to weigh the evidence and decide which opinion is the most credible and reliable.").

Campbell submitted into the record Dr. Sharma's treatment notes which described Campbell's complaints and treatment. Dr. Sharma's notes indicated the total knee replacement surgery was recommended and performed after other treatments did not satisfactorily resolve Campbell's complaints. Dr. Sharma's notes did not explicitly state whether there was a causal relationship between the April 2018 work incident and the total knee replacement surgery.

Campbell also submitted Dr. Madden's report, based on an early June 2020 examination of Campbell and review of Campbell's medical records. Dr. Madden's Form 107 discussed Campbell's continuing complaints but did not explicitly state how the April 2018 work incident led to the need for knee replacement surgery.

Dr. Madden checked "yes" to the following question: "Within reasonable medical probability, was plaintiff's injury the cause of his/her complaints?" And when asked for an explanation of causation, Dr. Madden stated that Campbell suffered shoulder and right knee injuries at work which required surgical repair. He opined that surgical repair had been successful but that "scar

tissue is never as strong as original tissue" so he found Campbell to be at "increased risk of future re-injury" with less trauma likely required to trigger re-injury. (R., p. 284.) Dr. Madden's report did not explicitly discuss whether the required surgical repair for injury to the right knee referred to only one or to both the meniscal repair surgery and the total knee replacement surgery.

Nonetheless, the ALJ construed Dr. Madden's report to indicate that the April 2018 incident led or contributed to a need for total knee replacement surgery despite later recognizing in an order denying reconsideration that Dr. Madden's report did not explicitly discuss this issue. In his summary of evidence, the ALJ listed Campbell's diagnoses noted by Dr. Madden in his report, including right knee meniscal tears and osteoarthritis and chronic knee pain. The ALJ stated that Dr. Madden's report expressed an opinion that all of the listed "injuries" were causally related to the April 2018 work incident. The ALJ acknowledged that Dr. Madden found "surgical repair on [Campbell's] knee was successful" but also noted Dr. Madden's statements that "scar tissue is never as strong as original tissue" and that Campbell would be at risk for future re-injury with less trauma likely required to create a re-injury. (Interlocutory opinion and order dated August 17, 2020, hereinafter "ALJ Opinion," p. 7.)

In his analysis, the ALJ explained why he ruled in Campbell's favor, relying on Dr. Madden's report. The ALJ construed Dr. Madden's report as

-10-

indicating that: "the right total knee replacement surgery would be causally related to the April 11, 2018 incident and that plaintiff continued to have right knee pain even after Dr. Johnson's meniscectomy and that he had right knee osteoarthritis which was not remedied by Dr. Johnson's surgery." (ALJ Opinion, p. 11.)

The ALJ explained why he believed the proof (including Campbell's testimony as well as medical evidence) showed that the April 2018 fall at work caused Campbell's meniscal tear and caused underlying, previously asymptomatic osteoarthritis to become symptomatic. The ALJ found that the meniscal repair surgery successfully repaired the meniscal damage, but failed to address symptoms from osteoarthritis which became worse and lingered after the meniscal repair:

> Having reviewed the evidence of record, the ALJ notes this is not the kind of case where a claimant with a knee injury undergoes a successful meniscal repair surgery and several years later, after virtually complete recovery, requires a total knee replacement surgery for osteoarthritis which he then tries to relate back to the original meniscal repair surgery. In the present case, the ALJ is persuaded from the fact that the plaintiff's April 11, 2018 work injury caused the meniscal damage which Dr. Johnson repaired, but that it also made plaintiff's underlying right knee osteoarthritis symptomatic, in [sic] this condition was never remedied by Dr. Johnson's surgery. Support for this conclusion comes from the fact that plaintiff credibly testified he continued to have right knee pain even after Dr. Johnson's surgery and the fact that he was referred to Dr. Sharma for treatment within just a few months of being released by Dr. Johnson. These facts lead the ALJ to conclude plaintiff's underlying osteoarthritis was symptomatic at the time of Dr. Johnson's surgery, but was not addressed by that

-11-

> meniscal repair and, instead, it continued to linger and
> worsen, necessitating Dr. Sharma's treatment. It should
> also be pointed out that the defendant's expert, Dr.
> Muffly, acknowledged that plaintiff had right knee
> osteoarthritis even though he believed plaintiff should not
> undergo right total knee replacement and instead, should
> attempt more conservative measures including injections.

(ALJ Opinion, p. 11.)

In response to Employer's assertion in its motion for reconsideration that Dr. Madden did not specifically discuss causation for the right knee replacement surgery, the ALJ admitted that Dr. Madden "did not explicitly say plaintiff's osteoarthritis or need for total knee replacement surgery were causally related to" the April 2018 work incident. (Order denying reconsideration, hereinafter "ALJ Order," pp. 1-2.) But the ALJ noted that on Section G of the Form 107, Dr. Madden diagnosed meniscal tears, osteoarthritis, and chronic knee pain and noted that surgical repair and total knee replacement had been performed. And the ALJ found Dr. Madden completed Section H of the form in a manner indicating that Campbell's diagnosed conditions were work related and allowing for a "reasonable inference that plaintiff's right knee osteoarthritis and TKR [total knee replacement] were work related." (ALJ Order, p. 2.)

The ALJ found that Dr. Madden explained the causal relationship "albeit in less than clear terms." And the ALJ inferred that Dr. Madden thought Campbell's current right knee problems "are a continuation of the pain from the

original April 11, 2018 injury, as he pointed out that plaintiff's right knee problems persisted" despite conservative treatment, then meniscal repair and then total knee replacement surgery. (*Id.*)

The ALJ also found there was no evidence of symptomatic right knee osteoarthritis before the work injury and that initial diagnostic tests following the work injury did not document symptomatic osteoarthritis. The ALJ also pointed out there was proof of symptomatic osteoarthritis within a few months of the meniscal repair surgery. The ALJ opined that the "temporal relationship cannot be ignored" and supported "Dr. Madden's causation opinion and the inference that the right knee osteoarthritis and need for [total knee replacement] are due to the effects of the April, 2018 work injury and November, 2018 surgery." (ALJ Order, p. 3.)

In affirming the ALJ, the WCB determined that the ALJ's inference that Dr. Madden believed the knee replacement surgery to be causally related to the April 2018 work incident was fully supported by Dr. Madden's report. It pointed to Dr. Madden's statements that "Mr. Campbell suffered an injury to the right shoulder and knee during the course of a normal workday" and that Campbell's "injuries required surgical repair." (WCB Opinion, p. 13.)

The WCB recognized that the ALJ admitted that Dr. Madden did not explicitly state the total knee replacement surgery was causally related to the April 2018 work incident. But it determined that the ALJ had discretion to draw

reasonable inferences, for which the WCB could not substitute its own judgment so long as the ALJ's inferences are supported by substantial evidence. The WCB further concluded that the inference of the total knee replacement surgery being work related was reasonable.

The WCB also found persuasive the fact that Dr. Madden's opinion attributed no portion of the whole person impairment rating to a preexisting active condition, despite specifically attributing a significant portion of the whole person impairment rating to the right knee replacement. So, the WCB determined that Dr. Madden's opinions were substantial evidence supporting the ALJ's determination of work-related medical causation.

As Employer argues, it submitted proof that three orthopedic surgeons expressed opinions that Campbell did not need knee replacement surgery. And each surgeon opined the knee replacement surgery was ordered to address osteoarthritis, which each viewed as having arisen solely from other factors such as the normal aging process rather than as a result of the April 2018 work incident.

KRS 342.0011(1) defines an injury for workers' compensation purposes as a work-related event proximately causing "a harmful change in the human organism evidenced by objective medical findings." And it excludes from this definition of injury "the effects of the natural aging process[.]" *Id.*

Employer argues that an ALJ could not "reasonably conclude or infer from the evidence that the April 11, 2018 event produced a level of harmful change sufficient to warrant" the total knee replacement surgery. According to Employer, "[n]either Dr. Madden nor Dr. Sharma [the surgeon] ever addressed causation of this surgery and there is no evidence to support the ALJ's decision." (Petition for review, p. 14.)

According to Employer: "Dr. Madden's report contained no evidence of surgery causation at all, much less in terms of reasonable medical probability, and as such this report comprised insufficient proof that the surgery was causally related to the work injury." Employer argues that nothing in Dr. Madden's report supports the ALJ's determination and urges this Court to vacate and remand "for a determination of whether substantial evidence supported the finding that the surgery was causally related to the work injury." (Petition for review, p. 15.) But the WCB explicitly stated that the ALJ's findings were supported by substantial evidence, including the ALJ's finding that there was a causal relationship between the knee replacement surgery and the April 2018 work injury – so we see no need to remand. Instead, the question is whether that conclusion by the WCB is supportable by the record.

Employer is certainly correct that the opinions of Dr. Madden in his report and Dr. Sharma in his treatment notes do not explicitly find a causal relation

between the April 2018 work incident and the total knee replacement with any degree of specificity – in contrast to the very specific, explicit opinions of its experts. But the ALJ has authority to make reasonable inferences from the evidence. *See, e.g.*, *Transportation Cabinet, Dep't of Highways v. Poe*, 69 S.W.3d 60, 62 (Ky. 2001). And the ALJ alone can determine which medical opinions he or she finds most credible and reliable. *Upchurch*, 127 S.W.3d at 621. Thus, we do not perceive that the WCB's assessment of the evidence to support a reasonable inference of medical causation amounts to flagrant error resulting in gross injustice. Nor do we believe that the WCB overlooked or misconstrued controlling statutes or precedent – other than its previously discussed harmless misstatement about the burden of proof and harmlessly overlooking KRS 342.735(3) – in upholding the ALJ's determination of medical causation. *See Kelly*, 827 S.W.2d at 687-88.

Employer points out that questions of medical causation generally must be addressed by medical experts and that the claimant must prove his/her condition was caused by work through expert medical evidence. (Petition for review, p. 13 (citing *Mengel v. Hawaiian-Tropic Northwest and Central Distributors, Inc*., 618 S.W.2d 184, 186-87 (Ky. App. 1981) and *Dupree v. Kentucky Dep't of Mines and Minerals*, 835 S.W.2d 887 (Ky. 1992))). It also argues that medical opinions must be based on a reasonable medical probability or

-16-

certainty pursuant to precedent such as *Young v. L.A. Davidson, Inc.*, 463 S.W.2d 924 (Ky. 1971). However, Dr. Madden certified that his opinions were stated to a reasonable medical certainty at the conclusion of his Form 107 medical report. Furthermore, Employer cites no authority indicating that Dr. Madden would not qualify as a medical expert – even though Dr. Madden was not an orthopedic surgeon unlike the other doctors whose opinions were considered in this case.

Employer also argues that Dr. Madden's opinions were too speculative to warrant their consideration. Employer cites *Combs v. Stortz*, 276 S.W.3d 282 (Ky. App. 2009), in which this Court affirmed a trial court's determination that medical testimony in a tort case should be excluded as too speculative since the treating physician testified only that the plaintiff "*might possibly require* neck and/or shoulder surgery." *Id*. at 296. But Dr. Madden did not opine in his report that Campbell "might need" knee replacement surgery; instead, Dr. Madden stated generally and with reasonable medical certainty that Campbell's injuries were caused by the work incident and required surgical repair.

While Dr. Madden's report did not directly state whether the surgical repair required involved both knee replacement surgery as well as the meniscal repair, it also did not explicitly limit the required surgical repair to the meniscal repair surgery and apparently neither party took steps to obtain more specificity in his opinions. But especially since Employer does not claim to have objected to

-17-

admission of Dr. Madden's report or to have taken steps to cross-examine Dr. Madden about his opinions,[6] we believe the WCB properly declined to second-guess the ALJ's assessment of the evidence and the inferences the ALJ drew from the evidence.

As Campbell points out, work-related arousal of a pre-existing previously dormant, asymptomatic condition into a disabling, symptomatic reality is compensable. *Finley v. DBM Technologies*, 217 S.W.3d 261, 265 (Ky. App. 2007). We do not believe the WCB flagrantly erred in assessing the evidence to support the ALJ's finding of a causal relationship between the April 2018 work incident and Campbell's osteoarthritis becoming symptomatic – thus prompting Dr. Sharma's recommendation for knee replacement. Furthermore, Employer has pointed to no proof in the record of Campbell having active, symptomatic osteoarthritis prior to the work fall.

So, in sum, we see no reason to reverse the WCB's upholding the ALJ's determinations of work-related medical causation. We lack grounds to "correct" the WCB as we cannot conclude that the WCB flagrantly erred in assessing the evidence resulting in a gross injustice. Nor do we perceive that the

---

[6] *See generally* KRS 342.033 (providing that a medical report "shall become a part of the evidentiary record, subject to the right of an adverse party to object to the admissibility of the report and to cross-examine the reporting physician."); 803 KAR 25:010 Section 10(8) ("If a medical report is admitted as direct testimony, an adverse party may depose the reporting physician in a timely manner as if on cross-examination at its own expense.").

WCB overlooked or misconstrued precedent – other than its overlooking KRS 342.735 and harmlessly misstating the burden of proof – in affirming the ALJ's finding that the knee replacement surgery was causally related to the April 2018 incident and therefore work related and compensable. *See Kelly*, 827 S.W.2d at 687-88. Instead, it appears that the WCB and ALJ properly focused on the overall substance of medical reports rather than whether they recited particular words indicating work-related medical causation. *See Upchurch*, 127 S.W.3d at 621.

### Challenge to Medical Reasonableness of and Necessity for Surgery

The ALJ concluded the discussion of the medical fee dispute issue by stating he was "persuaded by Dr. Madden's opinion that the right total knee replacement surgery was reasonable and necessary and causally related to the April 11, 2018 work injury." (ALJ Opinion, pp. 11-12.) In affirming the ALJ, the WCB stated that the ALJ's conclusion that the total knee replacement was reasonable and necessary was supported by Dr. Madden's statement that surgical repair was required for Campbell's knee injury and the ALJ's inference that Dr. Madden believed both knee surgeries were reasonable and necessary. The WCB also noted as further support Dr. Sharma's performing the knee replacement surgery and thus implicitly opining that the knee replacement surgery was reasonable and necessary.

Employer argues the WCB erred, contending that the opinions of three orthopedic surgeons that total knee replacement was not reasonable or necessary

-19-

treatment for any work-related injury is undisputed. It points to the lack of specific, explicit statements in Dr. Madden's report or Dr. Sharma's treatment notes that total knee replacement was reasonable and necessary.

Despite the Employer's experts stating their opinions in more explicit and specific language, the ALJ was permitted to make inferences from the more general opinion statements of Dr. Sharma and Dr. Madden. Furthermore, the WCB correctly declined to second guess the ALJ's judgment on the weight and credibility of the medical evidence. The ALJ, as the fact finder, has the sole authority to determine the "quality, character, and substance" of evidence. *Whittaker v. Rowland*, 998 S.W.2d 479, 481 (Ky. 1999). Also, "an ALJ may pick and choose among conflicting medical opinions and has the sole authority to determine whom to believe." *Copar, Inc. v. Rogers*, 127 S.W.3d 554, 561 (Ky. 2003). In sum, the ALJ was entitled to decide which doctors' opinions he found more credible and reliable and/or entitled to more weight.

We perceive no flagrant error or gross injustice in the WCB's assessment of the evidence to support the ALJ's finding that the knee replacement was medically reasonable and necessary. Nor do we perceive that the WCB overlooked or misconstrued controlling authority – other than harmlessly overlooking KRS 342.735(3) and making a harmless misstatement about the burden of proof – in upholding the finding of medical reasonableness and

necessity. Instead, we perceive that the ALJ and WCB properly focused on the overall substance of medical reports rather than whether they explicitly stated the "magic words" that the knee replacement surgery was reasonable and necessary. *See Upchurch*, 127 S.W.3d at 621. Thus, we must also affirm on this issue under the standard of review stated in *Kelly*, 827 S.W.2d at 687-88.

In sum, though another factfinder might have been more persuaded by the evidence submitted by the Employer, we cannot say that the ALJ's findings of medical causation, reasonableness, and necessity were unsupported by substantial evidence and reasonable inferences drawn therefrom. Further arguments in the petition for review and response which are not discussed herein have been determined to lack merit or relevancy to resolving this matter.

## CONCLUSION

For the reasons stated herein, we affirm the WCB.

ALL CONCUR.

BRIEF FOR APPELLANT:

W. Barry Lewis
Hazard, Kentucky

BRIEF FOR APPELLEE MARK CAMPBELL:

W. Gerald Vanover
London, Kentucky

NO BRIEFS FOR OTHER APPELLEES.